Ross BAIR, dba Bair Brothers; et al., Plaintiffs—Appellants,

v.

PACIFIC NORTHWEST SUGAR COMPANY LLC, a Washington limited liability company; et al., Defendants—Appellees.

Ross BAIR, dba Bair Brothers; Lyle K. Bair, dba Bair Brothers; Bair Brothers; Bergeson Farms, Inc., a Washington corporation; Ceekaydee Farms General Partnership, a Washington partnership; Keith B. Child; Corbett Draw Farms General Partnership, a Washington partnership; D & D Gilbert Farms, Inc., a Washington corporation; Tom Downs; Lamar Gilbert; David Hammond, Jerry Hodges; Chris Hyer; John Hyer; Mark Iverson; Steve Jorgensen; Sheffels & Son Inc., a Washington corporation; Leon R. Baker Farms LLC, a Washington lim-

ited liability company; Jerry C. Milbrandt; R & J Family Farms, Inc., a Washington corporation; Allan Robel; Ronald Roylance Farms, Inc., a Washington corporation; Roylance Coulee Partnership, a Washington partnership; Randy Roylance; SBS Farms LLC, a Washington limited liability company; Travis Steffler; Paul Stoker; Finn C. Clausen, dba Stokrose Farm and Feedlot; Stokrose Farm and Feedlot; Tim Taylor; Tracy Lybbert Farms, Inc., a Washington corporation; Duane Marcusen; Luis A. Martinez; State of Washington, Department of Natural Resources; Legacy Farms, Inc., a Washington corporation; Shane Christensen; J. Lyn Wood; Piercy Farms, Inc., a Washington corporation; Sweetwater Ranch LLC, a Washington limited liability company; Roger Roylance Farms, Inc., a Washington corporation; Kevin Jenks; Larry Schaapman; David Edler; Hisashi Inouye; Circle D, Inc., a Washington corporation; Diamond M, Inc., a Washington corporation; D. Glen Bair, Plaintiffs—Appellants,

v.

PACIFIC NORTHWEST SUGAR COMPANY LLC, a Washington limited liability company; Commodity Credit Corporation, a federally chartered government corporation; U.S. Department of Agriculture, Defendants—Appellees.

No. 02–35462.

D.C. No. CV–01–00310–AAM.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 6, 2003.

Filed Sept. 16, 2003.

Amended Jan. 15, 2004.

Bryce James Wilcox, Larry W. Larson, Lukins & Annis, Spokane, WA, for Plaintiff–Appellant.

Robert Scott Magnuson, Witherspoon, Kelley, Davenport and Toole, William H. Beatty, Office of the U.S. Attorney, Spokane, WA, for Defendant–Appellee.

Before B. FLETCHER, BRUNETTI, and MCKEOWN, Circuit Judges.

## ORDER AMENDING MEMORANDUM AND DENYING PETITION FOR REHEARING

The Memorandum filed September 16, 2003, is replaced with the Amended Memorandum filed concurrently with this order. Judge B. Fletcher's dissent remains unchanged and shall be refiled along with the Amended Memorandum.

With the Memorandum as amended, the panel has voted to deny appellants' petition for rehearing. The petition for rehearing, filed October 27, 2003, is DENIED.

## AMENDED MEMORANDUM*

Sugar beet growers in Washington state ("Growers") sued the Pacific Northwest Sugar Company ("PNSC"), a sugar processor, for money owed on sugar beets they sold to the PNSC. The Growers also sued the Commodity Credit Corporation ("CCC"), an agency of the United States Department of Agriculture, seeking a declaration that their liens are superior to those of the CCC. The district court granted the CCC's motion for summary judgment. The Growers appeal, arguing that the CCC's liens are not superior to their liens and that the CCC failed to obtain adequate assurances from the PNSC that the PNSC would pay certain amounts to the Growers. For the reasons stated below, we affirm the district court's judgment. The parties are familiar with the facts of this case and we refer to them only as necessary in this disposition.

### 1. Superiority of Liens

As a preliminary matter, we note that this case is governed by federal law, not state law, because the lien priority of a federal lending program is at issue. *See*

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

*United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 726, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979).

■ This case requires us to interpret 7 U.S.C. § 7284(d) and determine whether it gives the CCC a super-priority lien on refined sugar and the proceeds from that sugar. In performing statutory interpretation, we begin with the language of the statute. *Duncan v. Walker,* 533 U.S. 167, 172, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). We must give effect to every word in the statute, if possible, so as not to treat words as surplusage. *Id.* at 174. We construe a statute to avoid an absurd result. *In re County of Orange,* 262 F.3d 1014, 1018 (9th Cir.2001). We strive to avoid interpreting a statute in such a way that renders the statute unconstitutional. *Chapman v. United States,* 500 U.S. 453, 464, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991).

Using the text of the statute as our starting point, we hold that its plain meaning is dispositive in favor of the CCC. The text of § 7284(d) states:

> A security interest obtained by the Commodity Credit Corporation as a result of the execution of a security agreement by the processor of sugarcane or sugar beets shall be superior to all statutory and common law liens on raw cane sugar and refined beet sugar in favor of the producers of sugarcane and sugar beets and all prior recorded and unrecorded liens on the crops of sugarcane and sugar beets from which the sugar was derived.

7 U.S.C. § 7284(d). The Growers advance many arguments to the contrary. We address each in turn.

The Growers first argue that the text of the statute supports their conclusion. They contend that because the word "prior" is used with only crop liens, and not with refined sugar liens, a super-priority lien is created only as to crop liens. They argue that CCC liens trump producer liens in the refined sugar only if the producer liens arise after the CCC liens. The Growers argue that to interpret the statute differently is to render the word "prior" surplusage.

Despite the Growers' argument, the word "prior" is not rendered surplusage. The word "prior" is descriptive of liens on crops, which Congress may have presumed would typically arise prior to liens in refined sugar. Although the word "prior" does not have significant legal effect, it is not rendered completely useless. Indeed, the fact that the word "prior" does not add much to the statute is consistent with other language in the statute that, while descriptive, is not entirely necessary. For example, the statute refers to "all statutory and common law liens" where it could just say "all liens" and it refers to "all prior recorded and unrecorded liens" where it could just say "all prior liens." The use of the word "prior" in describing crop liens is not sufficient to support the negative inference that the Growers would have us draw from the word's absence in the description of the refined sugar liens. The Growers' textual argument effectively requires the addition of the word "subsequent" to the description of the CCC's liens' superiority over refined sugar liens, so that the CCC's liens would be superior only to "all [*subsequent*] statutory and common law liens on ... refined beet sugar in favor of the producers of ... sugar beets." But the statute does not contain the word "subsequent," and we decline to add it.

The Growers also argue that the CCC's super-priority lien works a hardship on them and thus conflicts with the CCC's statutory mandate to stabilize, support and protect farm income. *See* 15 U.S.C. § 714.

They also argue that when Congress suspended the CCC's direct price support authority for producers, 7 U.S.C. § 7301(b)(1) (suspending 7 U.S.C. § 1421 until 2002), they were left with little protection. But Congress is free to adjust this statutory scheme so as to provide greater protection to the CCC, which in turn benefits growers and processors alike because without CCC support, there is the risk that processing will cease and result in a total loss of crops. The Growers must turn to Congress to address their concerns, not the courts, as Congress is the body responsible for establishing this statutory scheme.

■■■■ The Growers further argue that the CCC's own contracts and regulations suggest that the CCC does not have a super-priority lien on the refined sugar. The Growers point to the "Notification of CCC's Security Interest," which states that where the CCC fails to obtain a lien waiver "from a superior lienholder," it will be subject to that lien "if ... the lien is established to be legally superior to CCC's interest." The Growers also focus on 7 C.F.R. § 1435.105(b) (2000), which states,

> If there are any liens or encumbrances on sugar pledged as collateral for a loan, the processor must obtain waivers that fully protect CCC's interest even though the liens or encumbrances are satisfied from the loan proceeds. No additional liens or encumbrances shall be placed on the sugar after the loan is approved.

7 C.F.R. § 1435.105(b) (2000). Contrary to the Growers' argument, however, the Notification and the regulation do not imply that the CCC does not have a super-priority lien. Rather, the Notification is expressly limited to situations where the CCC is determined to have an inferior interest. By its statement, the CCC is merely protecting other lienholders should a court determine that the CCC's lien is

somehow inferior to that of another lienholder. But there is no basis for holding that the CCC's liens in the present case are inferior. As for the regulation, it simply reduces the risk that the CCC will have to defend against claims from other lienholders. It also makes the collateral taken by the CCC more marketable by reducing encumbrances.

The Growers next argue that interpreting 7 U.S.C. § 7284(d) against their favor will present the risk of a Fifth Amendment taking, and that we should therefore adhere to their interpretation. Although we are not persuaded that our interpretation of 7 U.S.C. § 7284(d) presents such a risk, we need not and do not address the merits of any Fifth Amendment takings claim.

The parties disagree as to the helpfulness of two out-of-circuit cases in resolving the present dispute: the Federal Circuit's decision in *Montana v. United States*, 124 F.3d 1269 (Fed.Cir.1997), and the Fifth's Circuit decision in *United States v. Scottsbluff National Bank & Trust Co.*, 902 F.2d 351 (5th Cir.1990). Neither case is on point. In *Montana*, the state's interest was acquired after the CCC's liens, not before them. 124 F.3d at 1271, 1275–76. As for *Scottsbluff*, although it predated the statute at issue in this case, a nearly identical provision, 7 U.S.C. § 1425(b), was in effect. Nonetheless, the *Scottsbluff* case made no mention of the statute in its opinion and consequently sheds no light on the issues presented in this case.

Finally, the Growers argue that if we rely on the statute's plain language in recognizing super-priority liens in favor of the CCC in the refined sugar, then we must also adhere to the plain language and determine that there is no coverage for the proceeds from that sugar. They point out that 7 U.S.C. § 7284(d) does not refer to the proceeds of refined sugar. The Growers cite no authority, however, for the

proposition that we are bound to use only one mode of exegesis while performing statutory interpretation. And, as the CCC correctly argues, reading the statute not to apply to the proceeds of the sugar would produce the absurd result of nullifying the value of the CCC's liens. By contrast, such a concern with an absurd result is not presented in the analysis of the superiority of the CCC's liens in the refined sugar.

## 2. Adequate Assurances Requirement

■ The Secretary of Agriculture is required to obtain adequate assurances from processors who receive CCC loans that they will pay certain amounts to producers. 7 U.S.C.A. § 7272(e)(2)(A) (formerly § 7272(e)(2)) (West Supp. 2003). The Growers contend that such assurances were not provided in the present case.

The language of the statute leaves the determination of adequacy to the Secretary. As the CCC points out, the regulations pertaining to CCC loans state that "[n]onrecourse loan recipients shall pay all eligible producers who have delivered or will deliver sugar beets or sugarcane to such processor for processing not less than the minimum payment levels CCC specifies." 7 C.F.R. § 1435.106(c) (2000). This being the case, the Growers' hardship is attributable to the PNSC's execution of a security interest in favor of the CCC, not the CCC's acceptance of that interest. At any rate, although we recognize the hardship suffered by the Growers, we note that if not for the CCC's loans to the PNSC, the PNSC may very well have been unable to process the Growers' crops, resulting in a complete loss of all remaining unprocessed crops.

The judgment of the district court is AFFIRMED.

The Memorandum filed September 16, 2003, is replaced with the Amended Memorandum filed concurrently with this order.

Judge B. Fletcher's dissent remains unchanged and shall be refiled along with the Amended Memorandum.

With the Memorandum as amended, the panel has voted to deny appellants' petition for rehearing. The petition for rehearing, filed October 27, 2003, is DENIED.

BETTY B. FLETCHER, Circuit Judge, dissenting.

I respectfully dissent. In enacting 7 U.S.C. § 7284(d) Congress intended to give priority to those security interests that the CCC *properly* perfected. Here the CCC failed to follow its own regulations in the administration of the loans it made to PNSC, as well as congressional enactments intended to protect sugar growers. Were it not for these failures, the CCC would not have made the loans at issue. No "security interest" in the sugar at issue was created for the purposes of 7 U.S.C. § 7284(d), and the CCC cannot now use that provision to remedy its own deficiencies.

The authority of the CCC to make loans to entities like PNSC is not absolute. In the first instance, Congress has set forth certain requirements that must be met when the CCC makes loans to sugar processors. *See, e.g.,* 7 U.S.C. § 7272(e)(2) (2000). In addition, and perhaps more importantly in this case, Congress has given the CCC (through the Secretary of Agriculture) the authority to set further requirements in the administration of these loans. 7 U.S.C. § 7281(d) (2000). Under this authority, the CCC has issued regulations which set eligibility requirements for sugar processors seeking loans and impose a variety of other requirements on those processors once the loans are made. 7 C.F.R. §§ 1435.104—

1435.106 (2001).[1] One of these regulations requires that

> If there are any liens or encumbrances on sugar pledged as collateral for a loan, the processor must obtain waivers that fully protect CCC's interest even though the liens or encumbrances are satisfied from the loan proceeds. No additional liens or encumbrances shall be placed on the sugar after loan approval.

7 C.F.R. § 1435.105(b) (2001). The regulations also provide that "[n]o loan proceeds may be disbursed until the sugar has actually been processed *and is otherwise established as being eligible to be pledged as loan collateral.*" 7 C.F.R. § 1435.105(c) (2001) (emphasis added).

In this case, the CCC failed to obtain any lien waivers from the sugar growers, as required by 7 C.F.R. § 1435.105(b). The district court dismissed this issue by pointing to the language of § 1435.105(b), which mandates that the processor, not the CCC obtain the lien waivers. But while the literal language of that regulation places requirements on the processor, it is the CCC's responsibility to ensure that the regulations under which it operates the sugar loan program are followed. That responsibility is made clear by the next section of the regulation, which specifies that no loan proceeds may be disbursed until the sugar is "established as being eligible to be pledged as loan collateral." 7 C.F.R. § 1435.105(c) (2001). That section places an affirmative obligation on the CCC to ensure that the waivers are ob-

tained *before* the loans are disbursed. In the instant case, the PNSC never obtained the appropriate waivers from the growers, and the sugar was therefore never eligible as collateral. It then follows that, pursuant to its own regulations, the CCC should not have disbursed the loan proceeds in the first place.

Under the majority's reading of 7 U.S.C. § 7284(d), none of this matters, however, since any liens obtained by the CCC, whether properly or not, would have priority over all others. Congress meant to protect the CCC's liens only when they had been properly perfected. This is consistent with the language in 7 U.S.C. § 7284(d) and that of the CCC's regulations. If, as the majority asserts, § 7284(d) gives priority to the CCC's liens over any and all other liens on sugar, then there is no reason for the requirement in 7 C.F.R. § 1435.105(b) that the CCC obtain waivers to "fully protect" its interest. The CCC's interest would already be completely protected by § 7284(d) under the majority's reading.[2] Instead, there is a dual purpose for the regulation: first, as its own language indicates, it is meant to protect the CCC's interest in case of litigation such as the instant one; but, more importantly, the regulation serves to give notice to growers and other lien holders that, by operation of 7 U.S.C. § 7284(d), their liens are to be subordinated to those of the CCC.[3] The agency's interpretation is reasonable and consistent with congressional intent. We should defer to it.

1. While there was some dispute as to when the CCC loans to PNSC were actually made, the district court below assumed for purposes of its decision that all of the loans had been made between December 4, 2000 and January 16, 2001. The pertinent regulations are therefore those in effect during that time period, even though these sections have since changed.

2. It should be noted that the regulations discussed here were finalized by the Department

of Agriculture several months after Congress had enacted § 7284(d). *Compare* Implementations of the Farm Program Provisions of the 1996 Farm Bill, 61 Fed. Reg. 37,544, 37,618 (July 18, 1996) *with* Federal Agriculture Improvement and Reform Act of 1996, Pub. L. No. 104–127, 110 Stat. 888 (enacted April 4, 1996).

3. This analysis also explains the CCC's statements in its "Notification of CCC's Security Interest." That document states that "[i]n the

The CCC's failure to ensure that waivers had been obtained from prior lienholders was not its only deficiency in this case. 7 U.S.C. § 7272(e)(2) requires the CCC to obtain "such assurances as the Secretary considers adequate" to ensure that processors would provide payments to producers that are proportional to the value of the loan received by the processor for the sugar in question. In this case, the CCC contends, in essence, that it was taking PNSC's word that it would make such payments to sugar growers. Appellee Br. at 18–19. While the statute does give the CCC substantial leeway in determining what assurances are adequate, surely Congress did not intend to let the CCC simply take processors' word that it would make such payments. Some minimum level of oversight appears to be intended by this provision, and the CCC appears to have failed the sugar growers in this additional way.

In the end, CCC seeks § 7284(d)'s protection for loans that it should not have made in the first place since it never ensured that the proper waivers had been obtained. Congress certainly meant § 7284(d) to give priority to CCC's security interests, but only to give such protection when the CCC was administering the loan program properly. Since the sugar at issue here was never eligible as collateral in the first place, I would hold that the CCC never gained a "security interest" in that sugar, and that the CCC's "liens" at issue here are therefore not protected by § 7284(d).

event that CCC has failed to obtain a lien waiver from a superior lienholder," it will be subject to that lien if "the lien is established to be legally superior to CCC's interest." Under the majority's reading of 7 U.S.C. § 7284(d), it would appear that no lien could ever be established as legally superior to that of the CCC.