Francis Richard SCHRADER, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 11–285 C.

United States Court of Federal Claims.

Jan. 24, 2012.

Francis Richard Schrader, Myrtle Point, OR, pro se.

James P. Connor, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Brian M. Simkin, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

HEWITT, Chief Judge.

Before the court is plaintiff's Petition for Writ of Prohibition (Petition or Pet.), filed May 4, 2011, Docket Number (Dkt. No.) 1;[1] Defendant's Motion to Dismiss (defendant's Motion or Def.'s Mot.), filed August 5, 2011, Dkt. No. 10;[2] plaintiff's response to defendant's Motion[3] (plaintiff's Response or Pl.'s Resp.), filed October 3, 2011, Dkt. No. 13;[4]

---

1. Plaintiff attached three exhibits to his Petition for Writ of Prohibition (Petition or Pet.). Docket Number (Dkt. No.) 1. Exhibit 1 consists of three pages. Pet. Ex. 1. The first page of Exhibit 1, titled "Visiting List," appears to be a list of visitors who may visit Mr. Schrader in the correctional facility. *See* Pet. Ex. 1, at 1. The second page of Exhibit 1, titled "Inmate Request Form," appears to be a medical services request by Mr. Schrader for a prescription drug. *See* Pet. Ex. 1, at 2. The third page of Exhibit 1 appears to be a list of Mr. Schrader's personal property items that would be held by the Booking Deputy at the Lane County Adult Correctional Facility until Mr. Schrader's release. *See* Pet. Ex. 1, at 3. Exhibit 2 appears to be a lease agreement between Mr. Schrader, who is listed as the lessee, and Mr. William C. Jones, who is listed as the lessor. *See* Pet. Ex. 2. Exhibit 3 appears to be a land grant dated March 8, 1855 from the United States to Alan Rowley. *See* Pet. Ex. 3

2. Defendant attached an appendix to its motion to dismiss (defendant's Motion or Def.'s Mot.), Dkt. No. 10, containing materials from a case in the United States District Court for the District of Oregon (Oregon District Court) in which Mr. Schrader appears to be involved in ongoing litigation relating to the operation of his mine. *See id.* Exs. 1–11. The court refers to the eleven different portions of defendant's appendix to its motion to dismiss, which are enumerated in defendant's "Index to Appendix," as exhibits.

3. Plaintiff's document (plaintiff's Response or Pl.'s Resp.), filed October 3, 2011, Dkt. No. 13, was untitled; however, it appears to be in response to defendant's Motion, and the court therefore treats plaintiff's document as a response to defendant's Motion.

4. Plaintiff also attached ten exhibits to his Response, most of which do not appear material to the case. *See* Pl.'s Resp. Exs. 1–10. For example, plaintiff attached several passages from a catechism and the Bible, *see* Pl.'s Resp. Exs. 2, 6, three notarized witness statements relating to one of Mr. Schrader's arrests for civil contempt, *see* Pl.'s Resp. Ex. 4, and several memoranda of law relating to banking, bankruptcy and "defeating corruption by law," *see* Pl.'s Resp. Exs. 3, 8a-b. Plaintiff also attached an excerpt from the

and Defendant's Reply to Plaintiff's Response to Motion to Dismiss (defendant's Reply or Def.'s Reply), filed October 19, 2011, Dkt. No. 14.

For the following reasons, the court DISMISSES plaintiff's Petition pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC).

## I. Background

Pro se plaintiff Francis Richard Schrader (plaintiff or Mr. Schrader) appears to have been the lessee of a forty-acre rock pit in Myrtle Point, Oregon. Pet. Ex. 2 (lease agreement between Francis Schrader, lessee, and William C. Jones, lessor). The lease agreement covered a five-year period from February 1, 2006 to January 31, 2011 and appears to have provided that Mr. Schrader would pay $0.75 "per yard for all rock hauled/sold from the . . . rock pit." *Id.*

Plaintiff also appears to have been a prisoner at the Lane County Adult Correctional Facility in Oregon during February 2011. *See* Pet. Ex. 1 at 2–3 (documents naming Francis Schrader as an inmate). His imprisonment appears to have been incident to ongoing litigation in the United States District Court for the District of Oregon (Oregon District Court) regarding plaintiff's mining activities for which he was issued a number of citations and orders for violations of the health and safety standards of the Federal Mine Safety and Health Act of 1977 (Mine Act). *See* 30 U.S.C. §§ 801–964 (2006); *see generally* Def.'s Ex. (DX) 2 (Oregon District Court Complaint).

The following facts, drawn from the record of the Oregon District Court in *Secretary of Labor, Hilda L. Solis v. Francis Schrader,* No. 10–CV–0601, *see generally* Def.'s Mot. (including in its appendix documents from the record in the Oregon District Court), appear to be uncontested by plaintiff, Pl.'s Resp. *passim,* and provide some context for plaintiff's Petition in this court. However, they are unnecessary to the court's decision on defendant's Motion.

On three occasions during September 2008 inspectors from the United States Department of Labor, Mine Safety and Health Administration (MSHA) visited Mr. Schrader's mine. *See* DX 4 (Chais Declaration and Attachments) 34–63 (listing citations from a September 11, 2008 visit), 64–77 (listing citations from a September 16, 2008 visit), 78–98 (listing citations from a September 17, 2008 visit). After observing numerous violations of Mine Act health and safety regulations, MSHA officials issued Mr. Schrader a number of citations, *see id.,* and, eventually, orders that withdrew mine equipment and areas of the mine from service until the MSHA could verify compliance, *see id.* at 80–83 (withdrawing areas from service), 84–86, 96–98 (withdrawing equipment from service). On January 13, 2010 the Secretary of Labor (Secretary), Hilda L. Solis, filed a complaint against Mr. Schrader in the Oregon District Court, seeking to enjoin Mr. Schrader, referenced in the Complaint as "Francis Richard Schrader, an individual, d/b/a All Coast Concrete," and "a/k/a Frances Schrader and Son," DX 2 (Complaint) 10–11 (some capitalization omitted), from operating the "Barkley Pit, a rock quarry and rock crushing operation near Myrtle Point, Coos County, Oregon," *see id.* at 11, 16. On January 22, 2010, the Oregon District Court issued a temporary restraining order, finding, inter alia, that Mr. Schrader "is an owner/operator of a mine within the meaning of the [Mine] Act and is subject to the requirements of the [Mine] Act," that a TRO is "necessary because [d]efendants continue to refuse to comply with citations and orders issued by the Secretary's authorized representatives while carrying out inspections," and that defendants' actions "create a risk of irreparable injury, loss or damage." DX 5 (TRO) 100.

On February 12, 2010, after finding that defendants "continue to refuse to comply with citations and orders issued to them for violations of the [Mine] Act, and of mandatory safety and health standards issued under the [Mine] Act," the Oregon District Court issued a permanent injunction, enjoining defendants "from conducting any mining opera-

---

case, *Bond v. United States,* —— U.S. ——, 131 S.Ct. 2355, 180 L.Ed.2d 269 (2011), *see* Pl.'s Resp. Ex. 9, and an "Indentured Trust Directive"

requesting "$300,000 in pre 1935 silver dollars of functional currency of $10,000,000.00," *see* Pl.'s Resp. Ex. 10.

tions including but not limited to the work of extracting and/or milling of minerals, and the use of equipment in such work, within the meaning of the [Mine] Act, until they are in compliance with the [Mine] Act." DX 6 (Order Granting Permanent Injunction) 103–04. The Oregon District Court subsequently held show-cause hearings on April 30, 2010 and July 1, 2010 at which bench warrants were issued for Mr. Schrader's arrest. DX 1 (Docket Sheet) 6–7. The second arrest warrant was returned executed on February 11, 2011, *id.* at 8, and this appears to have resulted in Mr. Schrader's detention at the Lane County Adult Correctional Facility in Oregon during February 2011, *see* Pet. Ex. 1 at 2 (inmate request form dated February 13, 2011); *id.* at 2–3 (naming Francis Schrader as an inmate).

Plaintiff then filed a petition for a "writ of prohibition" in this court on May 4, 2011. Pet. 1. In his petition, Mr. Schrader states:

I petition the Federal Court of Claims, pursuant to 28 USC 1491, for a writ of prohibition and injunction to prohibit the District Court from exercising any further authority and enjoining further arrests by the Court and MSHA and the prosecutor who without found authority abducted me contrary to the limited authority of the Constitution for the United States of America and contrary to its terms and requirements for due process which provides no discretionary authority to any officer to deny.

*Id.* (citing Pet. Ex. 1). Mr. Schrader further asserts that "[t]hese princip[al] actors have violated the exclusive grant and covenant between me [and] the U.S. patent assignee by unlawful takings and stealing my livelihood." *Id.* (citing Pet. Ex. 2; Pet. Ex. 3).

Defendant argues that the court lacks subject matter jurisdiction over the majority of plaintiff's claims and that insofar as plaintiff's Petition alleges a regulatory taking, it fails to state a claim upon which relief can be granted. Def.'s Mot. 1. The court agrees.

## II. Legal Standards

### A. 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

"Subject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte.*" *Folden v. United States,* 379 F.3d 1344, 1354 (Fed.Cir.2004) (citing *Fanning, Phillips & Molnar v. West,* 160 F.3d 717, 720 (Fed.Cir.1998)). "In deciding whether there is subject-matter jurisdiction, 'the allegations stated in the complaint are taken as true and jurisdiction is decided on the face of the pleadings.'" *Folden,* 379 F.3d at 1354 (quoting *Shearin v. United States,* 992 F.2d 1195, 1195–96 (Fed.Cir. 1993)). Although complaints filed by pro se plaintiffs are generally held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), pro se plaintiffs nevertheless must meet jurisdictional requirements, *see Bernard v. United States,* 59 Fed.Cl. 497, 499, *aff'd,* 98 Fed. Appx. 860 (Fed.Cir.2004) (unpublished). If the court determines that it does not have subject matter jurisdiction, it must dismiss the claim. RCFC 12(h)(3).

The Tucker Act establishes and limits the jurisdiction of the United States Court of Federal Claims (Court of Federal Claims). 28 U.S.C. § 1491 (2006). The Tucker Act provides that this court has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act provides the waiver of sovereign immunity necessary for a plaintiff to sue the United States for money damages. *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). Accordingly, the Tucker Act provides the court with jurisdiction over suits "against the United States." 28 U.S.C. § 1491(a)(1). However, the Tucker Act does not confer any substantive rights upon a plaintiff. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). A plaintiff must establish an independent substantive right to money damages from the United States, that is, a money-mandating source within a contract, regulation, statute or constitutional provision

itself, in order for the case to proceed. *Jan's Helicopter Serv., Inc. v. FAA (Jan's Helicopter)*, 525 F.3d 1299, 1306 (Fed.Cir.2008).

### B. 12(b)(6) Motion to Dismiss for Failure to State a Claim

Rule 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." RCFC 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal (Iqbal)*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly (Twombly)*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

When determining whether to grant a Rule 12(b)(6) motion, the court "must accept as true all the factual allegations in the complaint" and make "all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed.Cir.2001). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

The purpose of Rule 12(b)(6) "is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed.Cir.1993). A failure to state a claim upon which relief can be granted warrants a judgment on the merits rather than a dismissal for lack of jurisdiction. *Gould, Inc. v. United States*, 67 F.3d 925, 929 (Fed.Cir. 1995).

### C. Transfer for Lack of Subject Matter Jurisdiction

■ Under 28 U.S.C. § 1631, a federal court may transfer a case to another federal court when (1) the transferring court lacks subject matter jurisdiction; (2) the case could have been brought in the transferee court at the time it was filed; and (3) such a transfer is in the interest of justice. 28 U.S.C. § 1631; *Joslyn v. United States*, 420 Fed.Appx. 974, 977 (Fed.Cir.2011).

### III. Discussion

For the following reasons, plaintiff's Petition—insofar as it states claims: for equitable relief, against individual federal officials, for tortious acts, under non-money-mandating constitutional provisions, or that challenge the lawfulness of agency actions—is dismissed for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). To the extent that plaintiff's Petition alleges that a regulatory taking has occurred, it is dismissed pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. The court finds that transfer of plaintiff's case to another federal court is not appropriate.

### A. The Majority of Plaintiff's Claims Lie Outside the Court's Jurisdiction

#### 1. Claims for Injunctive Relief

Plaintiff requests a "writ of prohibition and injunction to prohibit the [Oregon] District Court from exercising any further authority and enjoining further arrests by the [Oregon District] Court and MSHA and the prosecutor." Pet. 1.

■ The court has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1); *see also supra* Part II.A. However, the court "cannot grant equitable or injunctive relief, except in limited circumstances." *S. Nuclear Operating Co. v. United States*, 2007 WL

5177406, at *1 (Fed.Cl.2007) (citing 28 U.S.C. § 1491(b)(2); *Kanemoto v. Reno*, 41 F.3d 641, 644–45 (Fed.Cir.1994)).

■ The limited circumstances in which the court can grant equitable relief include bid protest cases, 28 U.S.C. § 1491(b)(2), or when equitable relief would be "ancillary to an affirmative obligation of the federal government to pay money damages," *Dethlefs v. United States*, 60 Fed.Cl. 810, 815 (2004). The circumstances in this case appear to be beyond the limits of the court's ability to grant equitable relief. Because plaintiff's equitable claims are neither raised in the context of a bid protest nor attached to a federal obligation to pay money damages, *see infra* Part III.B, plaintiff's equitable claims are outside the court's jurisdiction.

2. Claims Against the Oregon District Court, a Federal District Court Judge and a Federal Prosecutor

In addition, plaintiff's equitable and tort claims against the Oregon District Court, a federal district court judge and a federal prosecutor are beyond the jurisdiction of the court.

Plaintiff's Petition appears to state claims against the Oregon District Court, a federal judge and a federal prosecutor. *See* Pet. 1 (requesting the court enjoin "further arrests by the [Oregon District] Court and MSHA and the prosecutor").

■ The jurisdiction of the Court of Federal Claims is limited to suits against the United States. *United States v. Sherwood*, 312 U.S. 584, 588, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) (stating, as to the United States Court of Claims—in relevant respects the predeces-

sor to the Court of Federal Claims—"if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court"); *see* 28 U.S.C. § 1491 (providing the Court of Federal Claims jurisdiction over "any claim against the United States," subject to certain exceptions). Nor does the court have jurisdiction to review the decisions of a federal district court. *Joshua v. United States*, 17 F.3d 378, 380 (Fed.Cir.1994).

Because plaintiff's claims against the federal judge and the federal prosecutor are claims against individual federal officials, they are beyond the jurisdiction of the court.[5] *Sherwood*, 312 U.S. at 588, 61 S.Ct. 767; *see also Brown v. United States*, 105 F.3d 621, 624 (Fed.Cir.1997) (observing that "[t]he Tucker Act grants the Court of Federal Claims jurisdiction over suits against the United States, not against individual federal officials"). And under *Joshua*, 17 F.3d at 380, plaintiff's claims involving the Oregon District Court are also beyond the court's jurisdiction. Plaintiff's claims against the MSHA as an agent of the United States are addressed below in Part III.B.

3. Plaintiff's Tort Claims

■ Insofar as plaintiff's Petition or Response[6] alleges that civil wrongs have been committed against him by individuals or the United States, *see* Pet. 1, plaintiff's tort claims are beyond the jurisdiction of the court. The Tucker Act specifically excludes tort claims from the court's jurisdiction. 28 U.S.C. § 1491(a) (specifying that the Court of Federal Claims shall have jurisdiction over certain claims against the United States for "liquidated or unliquidated damages in cases

---

**5.** In addition, the court notes that "generally, a judge is immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9–10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (listing cases). The United States Supreme Court has observed, "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Id.* at 10, 112 S.Ct. 286 (quoting *Bradley v. Fisher*, 13 Wall. 335, 347, 20 L.Ed. 646 (1872)).

**6.** In addition, plaintiff's Response alleged for the first time that the government trespassed on his "rock pit/mine." Pl.'s Resp. 2. However, trespass is a tort, *see* Restatement (Second) of Torts § 158 (1965) ("One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally (a) enters land in the possession of the other, or causes a thing or a third person to do so, or (b) remains on the land, or (c) fails to remove from the land a thing which he is under a duty to remove."), and the court does not have jurisdiction over tort claims, 28 U.S.C. § 1491.

not sounding in tort"); *see also Brown*, 105 F.3d at 623.

### 4. Plaintiff's Constitutional Claims

Plaintiff invokes the Tucker Act, Pet. 1. (referencing "28 USC 1491"), and alleges a constitutional violation of due process, *id.* (alleging that the Oregon District Court, the MSHA and the prosecutor "abducted" plaintiff "contrary to ... the Constitution ... and contrary to its terms and requirements for due process"). Plaintiff's Response focuses primarily on his religious beliefs, *see generally* Pl.'s Resp., and he has attached as exhibits several passages from a catechism and the Bible, Pl.'s Resp. Exs. 2, 6. In addition, plaintiff attached to his Response, Pl.'s Resp. Ex. 9, an excerpt from *Bond v. United States*, ––– U.S. –––, 131 S.Ct. 2355, 180 L.Ed.2d 269 (2011), in which the United States Supreme Court held that an individual indicted for violating a federal statute may "challenge its validity on grounds that, by enacting it, Congress exceeded its powers under the Constitution, thus intruding upon the sovereignty and authority of the States," *id.* at 2360.

■ The Tucker Act confers jurisdiction on the court to hear certain claims against the United States and waives sovereign immunity as to such claims. 28 U.S.C. § 1491; *Mitchell*, 463 U.S. at 212, 103 S.Ct. 2961. A plaintiff under the Tucker Act must also establish an independent substantive right to money damages against the United States, under a contract, regulation, statute or constitutional provision. *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed.Cir.1994); *see also Jan's Helicopter*, 525 F.3d at 1299; *supra* Part II.A. Neither the due process clause of the Fifth Amendment nor the Fourteenth Amendment "mandate payment of money by the government." *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed.Cir.1995). The court is therefore without jurisdiction over plaintiff's due process claims.

Similarly, the First Amendment "does not mandate the payment of damages for its breach and cannot be construed as a money-mandating source." *Russell v. United States*, 78 Fed.Cl. 281, 288 (2007); *see also*

*United States v. Connolly*, 716 F.2d 882, 887 (Fed.Cir.1983) ("Like the due process clause of the fifth amendment, the literal terms of the first amendment neither explicitly nor implicitly obligate the federal government to pay damages."). Thus, insofar as plaintiff argues in his Response that the MSHA's enforcement of the Mine Act has infringed on his First Amendment rights to freely practice his religion, the court does not have jurisdiction to entertain those claims.

■ To the extent that plaintiff—through excerpts from the Bond opinion, Pl.'s Resp. Ex. 9—challenges the constitutionality of the Mine Act, this court does not have jurisdiction to entertain that challenge, *see Miller v. United States*, 67 Fed.Cl. 195, 199 (2005) (discussing the Antiterrorism and Effective Death Penalty Act and stating that "[t]his court is without jurisdiction to issue a declaratory judgment concerning the constitutionality of this federal statute").

### 5. Plaintiff's Regulatory Takings Claim

To the extent that plaintiff challenges the lawfulness of the MSHA's actions, *see* Pet. 1, that challenge is beyond the court's jurisdiction, *M & J Coal Co. v. United States (M & J Coal)*, 47 F.3d 1148, 1154 (Fed.Cir.1995) ("Neither the Court of Federal Claims nor [the United States Court of Appeals for the Federal Circuit (Federal Circuit) ] may entertain a collateral challenge to the validity of [Office of Surface Mining and Reclamation Enforcement] actions."); *see also Fla. Rock. Indus., Inc. v. United States*, 791 F.2d 893, 898 (Fed.Cir.1986) ("The Tucker Act suit in the Claims Court is not, however, available to recover damages for unauthorized acts of government officials."). Stated otherwise, a "claimant must concede the validity of the government action which is the basis of the taking claim to bring suit under the Tucker Act." *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802 (Fed.Cir.1993).

■ However, for a claim brought under the Tucker Act, the takings clause of the Fifth Amendment is a money-mandating source of jurisdiction. *Jan's Helicopter*, 525 F.3d at 1309. Therefore, the court has subject-matter jurisdiction over plaintiff's

Takings Clause claim, insofar as it may be construed as a claim for money damages stemming from an authorized regulatory taking.[7] The court now examines plaintiff's claim under the Takings Clause of the Fifth Amendment.

B. Plaintiff's Allegation of a Regulatory Taking under the Fifth Amendment Fails to State a Claim Upon Which Relief May be Granted

Plaintiff contends that the MSHA and other "princip[al] actors"—specifically the Oregon District Court and a federal prosecutor—"have violated the exclusive grant and covenant between me [and] the U.S. patent assignee by unlawful takings and stealing my livelihood." Pet. 1 (citing Pet. Exs. 2–3). Construing plaintiff's Petition liberally, *see Haines v. Kerner*, 404 U.S. at 520, 92 S.Ct. 594, and considering the ongoing litigation in the Oregon District Court, the court understands Mr. Schrader's statement to be a claim that the MSHA's enforcement action constituted a regulatory taking compensable under the Fifth Amendment of the United States Constitution.

Defendant argues that plaintiff's regulatory takings claim must be dismissed for failure to state a claim upon which relief may be granted. Def.'s Mot. 9–10.

■■■ The court uses a " 'two-tiered' approach" to analyze regulatory takings claims. *See M & J Coal*, 47 F.3d at 1153–54; *see Bair v. United States*, 515 F.3d 1323, 1327 (Fed.Cir.2008), *cert. denied*, 555 U.S. 1084, 129 S.Ct. 763, 172 L.Ed.2d 754 (2008). First, the court "must determine as a threshold matter whether the claimant has established a property interest for the purposes of the Fifth Amendment," *Bair*, 515 F.3d at 1327, that is, "whether the claimant possessed a stick in the bundle of property rights," *id.* (internal quotation marks omitted); *see also M & J Coal*, 47 F.3d at 1154. Only after the claimant identifies a legally cognizable property interest does the court "determine whether the challenged governmental action constituted a compensable taking of that property interest." *Bair*, 515 F.3d at 1327; *M & J Coal*, 47 F.3d at 1154.

1. Plaintiff Failed to Allege Facts Sufficient to Support a Claim of a Legally Cognizable Property Interest

In this case, plaintiff appears to contest the MSHA's September 2008 enforcement actions, in which MSHA officials issued a number of citations and orders to Mr. Schrader regarding repeated violations of the Mine Act's health and safety provisions. *See* Pet. 1 (referencing "unlawful takings" by the MSHA and others); *see generally* DX 4 (Chais Declaration and Attachments) (documenting numerous conditions that were potentially fatal to the miners working at Mr. Schrader's mine).[8] In support of his contention, plaintiff attached to his Petition a lease agreement dated February 1, 2006 between himself and William Jones, Pet. Ex. 3 (lease), and a partially unreadable document that appears to be a land grant from the United States to Alan Rowley pursuant to an act of Congress passed March 3, 1855, *see id.* (land grant).

Defendant argues that Mr. Schrader did not have a property interest in "operating his mine in violation of the health and safety standards of the Mine Act." Def.'s Mot. 13–14. The court agrees.

---

7. Plaintiff's Response requests that the court "make full restitution" as stated in an attached "Indentured Trust Directive," which requests "$300,000 in pre 1935 silver dollars or functional currency of $10,000,000.00 for this partial settlement." Pl.'s Resp. to Def.'s Mot. to Dismiss (Pl.'s Resp.), Dkt. No. 13 at 4; Pl.'s Resp. Ex. 10.

8. For example, an official from the United States Department of Labor, Mine Safety and Health Administration (MSHA) issued a citation dated September 11, 2008 that stated, "A large rock has been left perched above the crusher area. . . . [There was] no catch bench or barricade to protect miners. . . . Miners working or traveling in

this area risk receiving very serious or grave injuries. . . ." DX 4 (Brian Chais Declaration and Attachments) 39. After revisiting the site on September 17, 2011 and observing that "[n]o apparent effort has been made to remove the very large rock in the wall below the bench and above the crusher area," *id.* at 81, and that the "area below this rock has not been barricaded to prevent entry," *id.*, the MSHA official issued an order stating that "[t]he area North of the crusher is hereby ordered withdrawn from service until the large rock has been taken down and an MSHA inspector can observe compliance," *id.*

The Federal Circuit's decision in *M & J Coal*, 47 F.3d 1148, is instructive. In *M & J Coal*, the plaintiff coal company's mining activities had resulted in reports of extensive property damage to neighboring residents, including subsidence, severing a gas line and breaking a water line. *Id.* at 1151. After being contacted by concerned residents of the area, officials from the United States Department of Interior's Office of Surface Mining Reclamation and Enforcement visited the site and "issued a cessation order against M & J Coal 'for a condition, practice, or violation creating an imminent danger to the health and safety of the public.'" *Id.* The Federal Circuit affirmed the United States Court of Federal Claims' dismissal of plaintiff's claim, stating that "M & J never acquired the right to mine in such a way as to endanger the public health and safety." *Id.* at 1154–55.

In this case, Mr. Schrader's leasehold interest in the rock pit similarly did not include the right to mine in a way that violated the Mine Act's health and safety regulations.

■ To determine whether Mr. Schrader has a legally cognizable property interest to operate his mine free of the Mine Act's health and safety regulations, the court also considers the operative "background principles" in effect when Mr. Schrader obtained his leasehold interest in his mine. *Bair*, 515 F.3d at 1327 (observing that "[t]he Supreme Court in *Lucas* made clear that property interests are acquired subject to 'background principles' of law, and that limitations on property rights that otherwise would effect a categorical taking are permissible if they 'inhere in the title itself.'" (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1029, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992))). "[A] federal statute or authority can constitute a 'background principle' that inheres in the title to property interests arising after its enactment, therefore precluding a takings claim based on the application of the statute to those property interests." *Id.* at 1329 (citing, inter alia, *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1218 (Fed.Cir. 2005); *M & J Coal*, 47 F.3d at 1154).

In this case, the Mine Act, 30 U.S.C. §§ 801–965, constitutes a "background prin-

ciple." The Mine Act was passed by Congress in 1977 and included the Congressional finding that "there is an urgent need to provide more effective means and measures for improving the working conditions and practices in the Nation's coal or other mines in order to prevent death and serious physical harm, and in order to prevent occupational diseases originating in such mines." 30 U.S.C. § 801(c). The Mine Act requires, among other things, that "each operator of a coal or other mine and every miner in such mine," 30 U.S.C. § 801(g), comply with mandatory health and safety standards promulgated by the Secretary, *see* 30 U.S.C. § 811 (setting forth mandatory safety and health standards). Section 818 of Title 30 of the United States Code provides that "whenever the Secretary believes that the operator of a coal or other mine is engaged in a pattern of violation of the mandatory health or safety standards of this chapter, which in the judgment of the Secretary constitutes a continuing hazard to the health or safety of miners," the Secretary may seek injunctive relief, including a permanent or temporary injunction or a restraining order. 30 U.S.C. § 818(a)(2).

Mr. Schrader acquired his leasehold interest in the mine in 2006, long after the Mine Act was passed. *See* Pet. Ex. 2 (lease). Therefore, in this case, the Mine Act operates as a "'background principle' that inheres in the title to property interests arising after its enactment," *Bair*, 515 F.3d 1323, and precludes Mr. Schrader's takings claim based on MSHA's enforcement of the health and safety provisions of the Mine Act, *see M & J Coal*, 47 F.3d at 1153 ("[T]here can be no compensable interference if such land use was not permitted at the time the owner took title to the property.").

Plaintiff has not pleaded facts sufficient to support a claim that plaintiff had a legally cognizable interest in operating his mine free of the health and safety standards of the Mine Act. Plaintiff's regulatory takings allegation is therefore DISMISSED for failure to state a claim upon which relief can be granted, *see* RCFC 12(b)(6), and the court

need not proceed to the second stage of the regulatory takings inquiry.[9]

The court therefore GRANTS the government's motion to dismiss for failure to state a claim upon which relief can be granted as to Mr. Schrader's regulatory takings claim.

### C. Transfer of the Case to Another Court Is Not Appropriate

■ Although not requested to do so by plaintiff, the court considers sua sponte whether "it is in the interest of justice" to transfer plaintiff's Petition to another court under 28 U.S.C. § 1631.[10] *See Tex. Peanut Farmers v. United States*, 409 F.3d 1370, 1374–75 (Fed.Cir.2005) (stating that the Court of Federal Claims should have considered whether transfer was appropriate once the court determined that it lacked jurisdiction). The court will transfer a case when a plaintiff articulates a clearly stated and non-frivolous complaint. *See Phang v. United States*, 87 Fed.Cl. 321, 330–31 (2009), (declining to transfer the case on the grounds that plaintiff's claims were "unlikely to be meritorious in another court of the United States"), *aff'd*, 388 Fed.Appx. 961 (Fed.Cir.2010) (unpublished).

■ The court determines that it is not "in the interest of justice" to transfer plaintiff's Petition to another jurisdiction because plaintiff's claims are "unlikely to be meritori- ous in another court of the United States." *See Phang*, 87 Fed.Cl. at 330.

### IV. Conclusion

For the foregoing reasons, plaintiff's Petition is DISMISSED. The Clerk of Court is directed to ENTER JUDGMENT in favor of defendant. No costs.

IT IS SO ORDERED.

---

9. Even if Plaintiff had a legally cognizable property interest, and the court applied the test in *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), to determine whether the takings claim was compensable, plaintiff would likely not have a claim upon which relief can be granted. The challenged governmental action is an agency's enforcement action pursuant to its police power, under the Mine Act. *See* 29 U.S.C. § 557a (placing enforcement power for the Mine Act with the Assistant Secretary of Labor for Mine Safety and Health). Typically, when the government acts using its police power to protect public health and welfare, that exercise of authority is not a compensable taking. *Rith Energy, Inc. v. United States*, 270 F.3d 1347, 1352 (Fed.Cir.2001) (observing that the revocation of a mining permit "was an exercise of police power directed at protecting the safety, health, and welfare of the communities surrounding [plaintiff's] mine site" and stating that "[t]he exercise of the police power to address that kind of general public welfare concern is the type of governmental action that has typically been regarded as not requiring compensation for the burdens it imposes on private parties who are affected by the regulations"); *see also Page v. United States*, 51 Fed.Cl. 328, 340 n. 14 (2001).

10. Although plaintiff has not specifically requested a transfer, the court may "order[ ] transfer without being asked to do so by either party." *Tex. Peanut Farmers v. United States*, 409 F.3d 1370, 1375 (Fed.Cir.2005). The court considers transfer in this case because plaintiff is proceeding pro se, *see Skillo v. United States*, 68 Fed.Cl. 734, 743 n. 15 (2005) (granting transfer of pro se plaintiffs' claims sua sponte), and because the transfer statute language "persuasively indicates that transfer, rather than dismissal, is the option of choice," *Britell v. United States*, 318 F.3d 70, 73 (1st Cir.2003) (citing 28 U.S.C. § 1631 (2006)).