**L–3 SERVICES, INC., Aerospace
Electronics Division,
Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 11–755C.

United States Court of Federal Claims.

March 15, 2012.

Roy A. Klein, Melville, NY, for plaintiff.

Armando A. Rodriguez–Feo, United States Department of Justice, Washington, D.C., with whom was Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Kirk T. Manhardt, Assistant Director, and Stephen D. Tobin, United States Department of the Navy, for defendant.

**OPINION AND ORDER OF TRANSFER**

FIRESTONE, Judge.

On November 11, 2011, plaintiff L–3 Services Inc., Aerospace Electronics Division, now L–3 Tactical Systems, Inc., ("plaintiff") filed this lawsuit pursuant to the Contract Disputes Act ("CDA"), 41 U.S.C. § 7101 *et seq.* (formerly 41 U.S.C. § 601 *et seq.* (2006)), alleging that defendant the United States ("the government") improperly refused to pay $3,232,949 owed to plaintiff under a contract for the modification of the Navy's Sea Fighter vessel. Pending before the court is the government's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). In addition, if the court finds that it lacks subject matter jurisdiction, plaintiff requests that its case be transferred to the United States District Court for the District of Massachusetts in lieu of dismissal, pursuant to 28 U.S.C. § 1631. For the reasons discussed below, the court lacks subject matter jurisdiction over plaintiff's claims. The court **TRANSFERS** this case to the United States District Court for the District of Massachusetts.

**I. BACKGROUND**

The following facts are taken from plaintiff's complaint. On March 2, 2008, the United States Navy awarded plaintiff a contract

for modifications and improvements to the Navy's Sea Fighter vessel, an experimental vessel that is the Navy's largest dedicated at-sea research and development test platform for science and technology projects. Compl. ¶¶ 5–6. Several modifications to the contract brought the contract value to $32,627,081. *Id.* ¶ 6. On March 23, 2010, the Navy de-funded the contract value by $3,262,708, reducing the contract value to $29,364,373. *Id.* ¶ 20. Plaintiff objected to the de-funding and demanded that the funds be reallocated, but on April 10, 2010, the Navy rejected this demand. *Id.* ¶¶ 20–21. After an attempt to resolve the matter, plaintiff submitted an invoice to the Navy for $3,232,949 (the amount that could be invoiced against the previously funded contract value, less a retainage of $25,000). *Id.* ¶ 26. On March 30, 2011, the Navy rejected this invoice. *Id.* ¶ 27.

As a result, on May 4, 2011, plaintiff submitted a certified claim to the government under to the CDA, 41 U.S.C. § 7103, to recover $3,232,949. *Id.* ¶ 31. On July 5, 2011, the Navy rejected plaintiff's certified claim. *Id.* ¶ 32. Plaintiff then filed this suit on November 11, 2011, alleging that the Navy breached its contract with plaintiff by de-funding the contract and refusing to pay the sum specified in plaintiff's certified claim. *Id.* ¶ 34. Plaintiff also alleges that the Navy breached the implied covenant of good faith and fair dealing by capping funding of the contract, defunding the contract, and releasing funds appropriated to the contract and allocating them to an unrelated contract. *Id.* ¶ 40. Finally, plaintiff raises claims of *quantum meruit,* unjust enrichment, and fraud in the inducement. *See id.* at 13–15.

The government seeks to dismiss plaintiff's suit for lack of subject matter jurisdiction under RCFC 12(b)(1). The government argues that plaintiff's claims are "wholly maritime" and that under the applicable admiralty statutes, the Suits in Admiralty Act, 46 U.S.C. §§ 30901–30918, and the Public Vessels Act, 46 U.S.C. §§ 31101–31113, plaintiff's suit must be brought in federal district court. Def.'s Mot. at 4. Plaintiff argues that its claims are not maritime in nature because they arise from conduct separate from the performance of a maritime contract, and that therefore this court may hear its case under the CDA, 41 U.S.C. § 7104. Pl.'s Resp. at 8. Plaintiff also requests, should the court conclude that it lacks subject matter jurisdiction over plaintiff's claims, that the court transfer its case to the United States District Court for the District of Massachusetts. *Id.* at 9. The government opposes this request, arguing that plaintiff has ample time to file its action in district court. Def.'s Reply at 5–6. The court now turns to the parties' arguments.

## II. STANDARD OF REVIEW

### A. Dismissal for Lack of Subject Matter Jurisdiction

▮ Whether the court possesses jurisdiction to decide the merits of a case is a threshold matter. *See PODS, Inc. v. Porta Stor, Inc.,* 484 F.3d 1359, 1365 (Fed.Cir.2007) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). Because jurisdiction is a threshold matter, a case can proceed no further if a court lacks jurisdiction to hear it. *See Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." (citation omitted)). The plaintiff bears the burden of establishing subject matter jurisdiction and must do so by a preponderance of the evidence. *M. Maropakis Carpentry, Inc. v. United States,* 609 F.3d 1323, 1327 (Fed. Cir.2010) (citing *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed. Cir.1988)). When a party has moved to dismiss for lack of subject matter jurisdiction, the alleged facts in the complaint are viewed as true. *Pixton v. B & B Plastics, Inc.,* 291 F.3d 1324, 1326 (Fed.Cir.2002) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

### B. Transfer to a Court Where an Action Could Have Been Brought

▮ Under 28 U.S.C. § 1631, a federal court may transfer an action to another federal court when (1) the transferring court lacks subject matter jurisdiction; (2) the ac-

tion could have been brought in the transferee court at the time it was filed; and (3) such a transfer is in the interest of justice. *Palacios v. United States,* 100 Fed.Cl. 656, 658 (2011); *Thrustmaster of Texas, Inc. v. United States,* 59 Fed.Cl. 672, 674 (2004). The transfer statute language "persuasively indicates that transfer, rather than dismissal, is the option of choice." *Schrader v. United States,* 103 Fed.Cl. 92, 101 n. 10 (2012) (quoting *Britell v. United States,* 318 F.3d 70, 73 (1st Cir.2003)).

## III. DISCUSSION

### A. The Court Lacks Subject Matter Jurisdiction over Plaintiff's Claim

The government's motion to dismiss is based on an asserted lack of subject matter jurisdiction. The government argues that plaintiff's claims arise out of a maritime contract and therefore cannot be heard in this court.

■ The Suits in Admiralty Act, 46 U.S.C. §§ 30901–30918, and the Public Vessels Act, 46 U.S.C. §§ 31101–31113, govern admiralty claims against the government. These statutes preserve the traditional exclusive jurisdiction of the federal district courts over admiralty or maritime cases. *See also* 28 U.S.C. § 1333 (providing for federal district court jurisdiction as opposed to state court jurisdiction for "any civil case of admiralty or maritime jurisdiction"). The scope of the district courts' admiralty jurisdiction extends "to contracts that are 'wholly maritime' in nature." *Marine Logistics, Inc. v. England,* 265 F.3d 1322, 1324 (Fed.Cir.2001). It is well-settled that contracts to repair, renovate, or convert an existing vessel are "wholly maritime" in nature. *See, e.g., New Bedford Dry Dock Co. v. Purdy,* 258 U.S. 96, 99, 42 S.Ct. 243, 66 L.Ed. 482 (1922); *Umpqua Marine Ways, Inc. v. United States,* 925 F.2d 409, 411 (Fed.Cir.1991) (quoting *Tucker v. Alexandroff,* 183 U.S. 424, 438, 22 S.Ct. 195, 46 L.Ed. 264 (1902)). As such, contract claims relating to existing vessels may only be heard in federal district court.

■ In this case, plaintiff argues that the jurisdictional limitations set forth above do not apply because the present claims arise under the Contract Disputes Act ("CDA") and involve issues that do not relate to matters that are maritime in nature. Pl.'s Resp. at 7–8. Plaintiff contends that the CDA, which generally gives the Court of Federal Claims jurisdiction to hear contract disputes against the government, governs its non-maritime claims. Pl.'s Resp. at 7, 9.

■ The government argues that the CDA expressly exempts "maritime" contracts from the jurisdiction of the Court of Federal Claims. Def.'s Mot. at 4. In particular, the government asserts that the CDA preserves the traditional exclusive jurisdiction of the federal district courts over admiralty suits by expressly providing that suits "arising out of maritime contracts" are governed by the Suits in Admiralty Act or the Public Vessels Act. CDA, 41 U.S.C. § 7102(d); *Sea–Land Serv., Inc. v. Danzig,* 211 F.3d 1373, 1378 (Fed.Cir.2000); *S.W. Marine of San Francisco, Inc. v. United States,* 896 F.2d 532, 534 (Fed.Cir.1990) ("Jurisdiction over matters arising in admiralty, including maritime contracts, has traditionally been with the federal district courts."). The court agrees with the government that the contract claims at issue in this case involve the performance of a contract to repair, renovate, or convert an existing vessel and are maritime in nature. Therefore, the court agrees with the government that plaintiff's claims must be brought in federal district court.

Plaintiff concedes that the ship-modification contract at issue here is a maritime contract, but argues that its claims are not "wholly maritime" in nature and that therefore jurisdiction is proper in this court. Pl.'s Resp. at 7. Plaintiff bases its argument on a recent case involving this court's bid protest jurisdiction as well as several statutes and regulations.

Plaintiff first relies on the Court of Federal Claim's decision in *Red River Holdings, LLC v. United States,* 87 Fed.Cl. 768 (2009), to argue that because the focus of its contract claims do not relate to the maritime nature of its contract, the Court of Federal Claims may take subject matter jurisdiction

over its claims. Pl.'s Resp. at 7–8. The government argues in response that because *Red River Holdings* arose in a unique jurisdictional context not applicable here, plaintiff's reliance on *Red River Holdings* is misplaced. Def.'s Reply at 3–4. The court agrees.

The dispute in *Red River Holdings* arose under this court's exclusive bid protest jurisdiction, granted by the Tucker Act, 28 U.S.C. § 1491(b). In holding that it had jurisdiction over the plaintiff's bid protest challenge to a maritime contract—despite the traditional admiralty jurisdiction of the district courts—the *Red River Holdings* court relied on the exclusive nature of the Court of Federal Claims jurisdiction over all bid protest matters, regardless of the maritime character of the contract involved. *Red River Holdings, LLC v. United States,* 87 Fed.Cl. 768, 793 (2009) (holding that the bid protest matter "target[ed] the activities preliminary to the maritime contract award, governed by statutes and regulations which required the application of procurement law, a matter within the particular expertise, and since 2001, exclusive jurisdiction, of [the Court of Federal Claims.]"). This exclusive jurisdiction of the Court of Federal Claims over bid protest matters involving maritime contracts has since been clarified and codified by the National Defense Authorization Act for Fiscal Year 2012, Pub.L. No. 112–81, 125 Stat. 1298 (codified as amended in the Tucker Act, 28 U.S.C. § 1491(b)).[1]

The court agrees with the government, therefore, that the reasoning in *Red River Holdings* cannot be extended to provide jurisdiction over plaintiff's claims, which do not arise under this court's exclusive bid protest jurisdiction but instead involve the performance of a maritime contract. In fact, the *Red River Holdings* decision expressly distinguishes claims arising under this court's exclusive bid protest jurisdiction from those arising under the CDA, noting that the CDA,

due to its specific statutory language, mandates that disputes involving the performance of maritime contracts belong in federal district court:

> The [CDA] ... has an exception for maritime matters. Accordingly, while protests over maritime procurements are exclusive to this court, subsequent disputes over the performance of the contract awarded, by the nature of the maritime classification of the contract, fall into CDA's specific exception, and belong in a district court.

*Red River Holdings,* 87 Fed.Cl. at 798 (internal citations omitted). Here, plaintiff's case is one of the "subsequent disputes" that is governed by the CDA's specific exception.

■ In addition, the court agrees with the government that none of the other statutory provisions plaintiff cites in support of jurisdiction have merit. Plaintiff argues that the court possesses jurisdiction here because the government's actions violate the Anti–Deficiency Act ("ADA"), 31 U.S.C. § 1341, and several provisions of the Federal Acquisition Regulation ("FAR"). Under the ADA, "procurement agencies or employees are prohibited from entering into a contract for future payment of money in advance of, or in excess of, an existing appropriation." *Rick's Mushroom Serv., Inc. v. United States,* 521 F.3d 1338, 1346 (Fed.Cir.2008) (internal quotation omitted). Plaintiff contends that the government violated the ADA by de-obligating and de-funding the Sea Fighter contract. Pl.'s Resp. at 8. Plaintiff also argues that the government violated similar provisions of the FAR that reiterate the requirements of the ADA or provide procedures by which a contracting officer may de-obligate funds. *Id.* (citing FAR §§ 32.704(c), 42.302(a)(70)). Plaintiff contends that these allegations of misconduct stand apart from the maritime nature of the ship-modification contract at issue and can be enforced in this court. *Id.*

1. The amended language of § 1491(b) is as follows:

(6) Jurisdiction over any action described in paragraph (1) arising out of a maritime contract, or a solicitation for a proposed maritime contract, shall be governed by this section and shall not be subject to the jurisdiction of the district courts of the United States under the Suits in Admiralty Act (chapter 309 of title 46) or the Public Vessels Act (chapter 311 of title 46).

National Defense Authorization Act for Fiscal Year 2012, Pub.L. No. 112–81, § 861.

■ At the outset, the court agrees with the government that plaintiff's reliance on the ADA or the FAR provisions as a grounds for jurisdiction in this court is without merit. The ADA and FAR provisions do not provide a substantive right to money damages and therefore cannot, by themselves, support a finding of jurisdiction in the Court of Federal Claims. *See, e.g., United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Taylor v. United States,* 310 Fed.Appx. 390, 391–92 (Fed.Cir.2009). The ADA requires an agency head to report violations of the ADA to the President, Congress, and the Comptroller General and subjects federal employees who violate the Act's provisions to administrative and penal sanctions. 31 U.S.C. §§ 1349–51. The ADA cannot be characterized as money-mandating. Similarly, FAR § 32.704(c) references the ADA, and states, "Government personnel encouraging a contractor to continue work in the absence of funds will incur a violation of Revised Statutes Section 3679 (31 U.S.C. 1341) [ (the Anti–Deficiency Act) ] that may subject the violator to civil or criminal penalties." FAR 42.302(a)(70) states, in relevant part, "The contracting officer normally delegates the following contract administration functions to a CAO.... (70) Deobligate excess funds after final price determination." Neither of these provisions are money-mandating, and thus cannot serve as a basis for jurisdiction.

More fundamentally, however, plaintiff's allegations against the government based on the ADA and the FAR provisions, as well as plaintiff's remaining claims,[2] all relate to the performance of what plaintiff concedes is a maritime contract and therefore must be heard, by application of the Suits in Admiralty Act, in federal district court. This court therefore lacks jurisdiction over plaintiff's claims.

## B. Transfer of Plaintiff's Claim Is Appropriate

Plaintiff requests that, if this court finds that it lacks subject matter jurisdiction over its claim, the court transfer the case to the United States District Court for the District of Massachusetts. Pl.'s Resp. at 9. The government opposes this request. Def.'s Reply at 6. The parties' dispute in this regard focuses on the third factor the court must analyze in considering transfer: whether transfer would be in the interest of justice. *Palacios v. United States,* 100 Fed.Cl. at 658. The government contends that because the statute of limitations on plaintiff's claim has not yet expired, it is not in the interest of justice to transfer plaintiff's complaint to the district court. Def.'s Reply at 6.

■ The court disagrees. The transfer statute language "persuasively indicates that transfer, rather than dismissal, is the option of choice." *Schrader v. United States,* 103 Fed.Cl. at 101 n. 10 (quoting *Britell,* 318 F.3d at 73). Although plaintiff's claim is not yet untimely, "transfers of actions filed in good faith generally are viewed as minimizing transaction costs and expediting review, thereby furthering the interests of justice." *Reilly v. United States,* 93 Fed.Cl. 643, 653 (2010) (citing *Ruiz v. Mukasey,* 552 F.3d 269, 276 (2d Cir.2009); *Butler v. United States,* 442 F.Supp.2d 1311, 1317 (C.I.T.2006)). Transfer will cure the jurisdictional defects of plaintiff's complaint and expedite its review in district court. Moreover, the government does not demonstrate that the transfer would unduly burden the judicial system, or that it will be harmed by transfer. *See Tex.*

---

2. Like plaintiff's breach of contract claims, plaintiff's *quantum meruit* and restitution claims arise in connection with a maritime contract with the government, over which this court does not have jurisdiction. Furthermore, the court agrees with the government that the court lacks independent jurisdiction over plaintiff's equitable claims under the Tucker Act. *Lumbermens Mut. Cas. Co. v. United States,* 654 F.3d 1305, 1317 n. 9 (Fed.Cir. 2011) (noting that recovery in *quantum meruit* is an implied-in-law contract, over which the Court of Federal Claims lacks jurisdiction); *see Martinez v. United States,* 281 F.3d 1376, 1380 (Fed.

Cir.2002) (noting that this court lacks jurisdiction over unjust enrichment claims based upon contracts implied in law).

Similarly, this court lacks independent jurisdiction over plaintiff's tort claim. Even if, as plaintiff suggests, plaintiff's fraud in the inducement claim could be considered anterior to and thus separate from plaintiff's maritime contract, this court would still lack jurisdiction over this tort claim under the Tucker Act. 28 U.S.C. § 1491(a) (withholding jurisdiction in the Court of Federal Claims for cases "sounding in tort").

*Peanut Farmers v. United States,* 409 F.3d 1370, 1375 (Fed.Cir.2005). The court thus concludes that transfer of plaintiff's complaint is appropriate.

It is apparent from the face of the complaint that plaintiff maintains its principal place of business in Massachusetts. The court therefore grants plaintiff's request to **TRANSFER** this case to the United States District Court for the District of Massachusetts.

## IV. CONCLUSION

For the foregoing reasons, the Court of Federal Claims does not have jurisdiction over plaintiff's claims. Plaintiff's request to transfer its complaint in lieu of dismissal is granted. The clerk is directed to **TRANSFER** this case to the United States District Court for the District of Massachusetts.

**IT IS SO ORDERED.**