# United States Court of Appeals for the Federal Circuit

2007-5049

ROSS L. BAIR, LYLE K. BAIR, BAIR BROTHERS, BAIR FARMS, INC.,
BERGESON FARMS, INC., CEEKAYDEE FARMS GENERAL PARTNERSHIP,
KEITH B. CHILD, CORBETT DRAW FARMS GENERAL PARTNERSHIP,
D & D GILBERT FARMS, INC., TOM DOWNS, J. LAMAR GILBERT,
DAVID HAMMOND, JERRY HODGES, CHRIS HYER, JOHN HYER,
MARK IVERSON, L. SHEFFELS & SONS, INC., LEON R. BAKER FARMS, LLC, JERRY
C. MILBRANDT, R & J FAMILY FARMS, INC., ALLAN ROBEL,
RONALD ROYLANCE FARMS, INC., ROYLANCE COULEE PARTNERSHIP,
RANDY ROYLANCE, SBS FARMS, LLC, TRAVIS STEFFLER, PAUL STOKER,
STOKROSE FARM AND FEEDLOT, TIM TAYLOR, TRACY LYBBERT FARMS, INC.,
DUANE MARCUSEN, LUIS A. MARTINEZ, FRANK MARTINEZ, LEGACY FARMS, INC.,
SHANE CHRISTENSEN, J. LYN WOOD, PIERCY FARMS, INC., AG CAPITAL COMPANY,
KEVIN JENKS, ROGER ROYLANCE FARMS, INC., LARRY SCHAAPMAN, DAVID EDLER,
CIRCLE D, INC., DIAMOND M, INC., D. GLEN BAIR,
and WASHINGTON STATE DEPARTMENT OF NATURAL RESOURCES,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.
.

Bryce J. Wilcox, Lukins & Annis, P.S., of Spokane, Washington, argued for plaintiffs-appellants.

Steven M. Mager, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General, Jeanne E. Davidson, Director, and Mark A. Melnick, Assistant Director. Of counsel was Gregory T. Jaeger, Attorney.

Appealed from: United States Court of Federal Claims

Judge Lawrence M. Baskir

# United States Court of Appeals for the Federal Circuit

2007-5049

ROSS L. BAIR, LYLE K. BAIR, BAIR BROTHERS, BAIR FARMS, INC., BERGESON FARMS, INC., CEEKAYDEE FARMS GENERAL PARTNERSHIP, KEITH B. CHILD, CORBETT DRAW FARMS GENERAL PARTNERSHIP, D&D GILBERT FARMS, INC., TOM DOWNS, J. LAMAR GILBERT, DAVID HAMMOND, JERRY HODGES, CHRIS HYER, JOHN HYER, MARK IVERSON, L. SHEFFELS & SONS, INC., LEON R. BAKER FARMS, LLC, JERRY C. MILBRANDT, R & J FAMILY FARMS, INC., ALLAN ROBEL, RONALD ROYLANCE FARMS, INC., ROYLANCE COULEE PARTNERSHIP, RANDY ROYLANCE, SBS FARMS, LLC, TRAVIS STEFFLER, PAUL STOKER, STOKROSE FARM AND FEEDLOT, TIM TAYLOR, TRACY LYBBERT FARMS, INC., DUANE MARCUSEN, LUIS A. MARTINEZ, FRANK MARTINEZ, LEGACY FARMS, INC., SHANE CHRISTENSEN, J. LYN WOOD, PIERCY FARMS, INC., AG CAPITAL COMPANY, KEVIN JENKS, ROGER ROYLANCE FARMS, INC., LARRY SCHAAPMAN, DAVID EDLER, CIRCLE D, INC., DIAMOND M, INC., D. GLEN BAIR, and WASHINGTON STATE DEPARTMENT OF NATURAL RESOURCES,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in consolidated case 04-CV-1689, with 04-CV-1846, 04-CV-1847, 04-CV-1848, 04-CV-1849, 04-CV-1850, 04-CV-1851, 04-CV-1852, 04-CV-1853, 04-CV-1854, 04-CV-1855, 04-CV-1856, 04-CV-1857, 04-CV-1858, 04-CV-1859, 04-CV-1860, 04-CV-1861, 04-CV-1862, 04-CV-1863, 04-CV-1864, 04-CV-1865, 04-CV-1866, 04-CV-1867, 04-CV-1868, 04-CV-1869, 04-CV-1870, 04-CV-1871, 04-CV-1872, 04-CV-1873, 04-CV-1874, 04-CV-1875, 04-CV-1876, 04-CV-1877, 04-CV-1878, 04-CV-1879, 04-CV-1880, 04-CV-1881, 04-CV-1882, 04-CV-1883, 04-CV-1884, 04-CV-1885, 04-CV-1886, 04-CV-1887, 04-CV-1888, 04-CV-1889, and 04-CV-1891, Judge Lawrence M. Baskir.

_____

DECIDED: February 5, 2008

_____

Before LINN, DYK, and MOORE, Circuit Judges.

DYK, Circuit Judge.

This case involves a takings claim. The alleged taking resulted from the Commodity Credit Corporation's ("CCC") enforcement of its super-priority lien interest in sugar produced from sugar beets under 7 U.S.C. § 7284(d) (2000). Appellants Ross L. Bair, et al. ("appellants") are sugar beet growers whose state-law liens on the sugar were rendered valueless by the enforcement of CCC's super-priority lien. They appeal from the decision of the United States Court of Federal Claims granting summary judgment in favor of the government. Because we conclude that the Court of Federal Claims correctly determined that there was no taking, we affirm.

BACKGROUND

Appellants are producers of sugar beets in Washington state. They contracted with processor Pacific Northwest Sugar Company ("PNSC") to process their 2000 sugar beet crop into refined beet sugar. The beets were delivered for processing. Payment for the beets was to occur over the course of several months, but PNSC only made the first 55% of those payments. Under Washington law, upon delivery of an agricultural product to a processor, "the producer has a first priority statutory lien, referred to as a 'processor lien.'" Wash. Rev. Code. § 60.13.020 (2007). This lien "attaches to the agricultural products . . . delivered, to the processor's or conditioner's inventory, and to the processor's or conditioner's accounts receivable." Id. Appellants delivered their beets to PNSC on or before December 1, 2000, and therefore had state statutory processor liens that attached by that date. Both parties agree that the liens gave appellants a lien on the sugar beets, the sugar refined from those beets, and any

proceeds from the sale of that sugar. If PNSC failed to make a payment under the contract, appellants were entitled to foreclose and enforce the lien by a civil action in state court. See id. § 60.13.070 ("The processor . . . liens may be foreclosed and enforced by civil action in superior court.").

The CCC, an agency of the United States within the Department of Agriculture, makes loans to sugar beet processors in order to provide price support to the domestic sugar market. Between October 10, 2000, and February 12, 2001, the CCC issued twenty-one nonrecourse loans to PNSC. Upon making these loans, the CCC acquired a security interest in the refined sugar produced by PNSC from appellants' beets. Appellants' state processor liens, which attached upon delivery of the beets and later attached to the sugar produced from the beets, necessarily predated the later CCC loans, which were secured by the sugar refined from those beets. Nonetheless, the CCC's loans received super-priority over appellants' loans under 7 U.S.C. § 7284(d), which provides:

> A security interest obtained by the Commodity Credit Corporation as a result of the execution of a security agreement by the processor of sugarcane or sugar beets shall be superior to all statutory and common law liens on raw cane sugar and refined beet sugar in favor of the producers of sugarcane and sugar beets and all prior recorded and unrecorded liens on the crops of sugarcane and sugar beets from which the sugar was derived.

On March 5, 2001, after paying about half of what it owed to appellants, PNSC defaulted on its agreement with them. After this default by PNSC, appellants timely filed statements evidencing their processor liens on March 22, 2001. See Wash. Rev. Code. § 60.13.050 (requiring producers to file liens within twenty days of payment due date in order to maintain priority over earlier-filed liens and perfected security interests). On

September 19, 2001, appellants brought suit in Washington state court, against both PNSC and CCC, seeking foreclosure of those liens and recovery of $8,714,690.

The government removed this action to the United States District Court for the Eastern District of Washington. The district court granted summary judgment in favor of the CCC because it concluded that the plain language of 7 U.S.C. § 7284(d) afforded super priority to the CCC's liens. Bair v. Pac. Nw. Sugar Co., No. CS-01-0310, slip op. at 24 (E.D. Wash. Feb. 21, 2002) (unpublished), aff'd, 85 F. App'x 555 (9th Cir. 2004) (not selected for publication in the Federal Reporter). As a result of these rulings, the CCC was able to recover $4,540,803 of its outstanding loans, through a combination of the remaining processed sugar and the proceeds from its sale, and wrote off $10,411,089 of PNSC's debt. No sugar or proceeds remained to pay PNSC's debt to appellants, and their liens were rendered worthless.

On November 19, 2004, appellants filed a complaint in the United States Court of Federal Claims, alleging that the application of 7 U.S.C. § 7284(d) constituted a taking under the Fifth Amendment. The Court of Federal Claims determined that "[t]he Federal statute created a pre-existing limitation on the property rights that the Growers could acquire under state law." Bair v. United States, No. 04-CV-1689, slip op. at 10 (Fed. Cl. Jan. 11, 2007). The court therefore held that the application of that statute did not constitute a taking, and granted summary judgment in favor of the government. Id. at 12.

Appellants timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

We review the Court of Federal Claims's decision to grant summary judgment without deference. Old Stone Corp. v. United States, 450 F.3d 1360, 1367 (Fed. Cir. 2006).

The Supreme Court has recognized two types of regulatory takings—categorical regulatory takings and partial regulatory takings. If a partial regulatory taking is alleged, we must undertake the fact-based inquiry set out by the Supreme Court in Penn Central Transportation Co. v. New York City, 438 U.S. 104 (1978). The Supreme Court has identified several relevant factors that have particular significance, including: (i) "the character of the governmental action"; (ii) "[t]he economic impact of the [action] on the claimant"; and (iii) "the extent to which the [action] has interfered with distinct investment-backed expectations." Id. at 124. If a categorical regulatory taking is alleged, we ask only whether the regulatory imposition is one that "denies all economically beneficial or productive use of [the property]." Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015 (1992); see also Maritrans Inc. v. United States, 342 F.3d 1344, 1353 (Fed. Cir. 2003). Appellants contend that such a categorical taking occurred here because their liens were rendered valueless by the government's foreclosure on the CCC liens and consequent enforcement of its statutory super-priority right, which left no collateral or proceeds from which the appellants' liens could be satisfied.

We assume without deciding that the correct date from which to judge whether a taking occurred is, as appellants contend, the date on which the government asserted its super-priority interest against the appellants and that this action rendered their

property valueless. However, under either type of alleged regulatory taking (categorical or partial), before we undertake a Penn Central or Lucas analysis, we must determine as a threshold matter whether the claimant has established a property interest for purposes of the Fifth Amendment. See Members of the Peanut Quota Holders Ass'n v. United States, 421 F.3d 1323, 1330 (Fed. Cir. 2005); Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1372 (Fed. Cir. 2004); Maritrans Inc., 342 F.3d at 1351. In other words, we ask "whether the claimant possessed a 'stick in the bundle of property rights.'" Adams v. United States, 391 F.3d 1212, 1218 (Fed. Cir. 2004) (citation omitted). "It is axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation." Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001). Once the claimant has identified a valid property interest, we must determine whether the challenged governmental action constituted a compensable taking of that property interest. See Am. Pelagic, 379 F.3d at 1372.

The central dispute in this case is whether appellants possessed a compensable property interest in their right to lien priority over the CCC's liens on PNSC's refined sugar. The Supreme Court in Lucas made clear that property interests are acquired subject to "background principles" of law, and that limitations on property rights that otherwise would effect a categorical taking are permissible if they "inhere in the title itself." 505 U.S. at 1029. The parties do not dispute that, under Washington law, appellants' interests were created in 2000, with the last date of creation being December 1, 2000. At that time both state law and federal law existed purporting to define the priority of the appellants' liens.

Appellants argue, however, that only the states, and not the federal government, have the power to create and define property rights, and that the federal statute therefore cannot constitute a "background principle" of law in derogation of appellants' state-created right to lien priority.[1]  We reject appellants' argument.

We first note that the Supreme Court has held that federal law determines what constitutes "property" for purposes of applying federal statutes.  In particular, the Court has made clear that "the priority of liens stemming from federal lending programs must be determined with reference to federal law."  United States v. Kimbell Foods, Inc., 440 U.S. 715, 726 (1979); see also United States v. Craft, 535 U.S. 274, 278-79 (2002) ("State law determines only which sticks are in a person's bundle.  Whether those sticks qualify as 'property' for purposes of the federal tax lien statute is a question of federal law.").

Despite the statements in a number of Supreme Court cases referring to the creation of property interests by state law, the Court has recognized that state-created property interests may be limited by federal laws, even in the area of real property.  In Lucas itself, the Supreme Court recognized that federal law can constitute a "background principle" for purposes of categorical takings.  For example, the Lucas majority approvingly cited Scranton v. Wheeler, 179 U.S. 141 (1900), 505 U.S. at 1029.  There the Court held that the construction of a pier by the federal government, which destroyed a riparian owner's access to navigable waters, did not effect a taking because

---

[1]  Appellants "maintain that property rights are created and defined by state law, and such rights cannot be abridged by federal legislation, for if this was the case, Congress could effectively legislate around the Takings Clause.  This point of disagreement is the sole issue on appeal."  Br. of Plaintiffs-Appellants at 23.

the riparian owner's title "was acquired subject to the rights which the public have in the navigation of such waters." Scranton, 179 U.S. at 163.

In cases of personal property, the background principles are defined by the law existing at the time that the property came into existence. Any lawful regulation defining the scope of the property interest that predates the creation of that interest will "inhere in the title" to the property.[2]

For example, in the bankruptcy context, the Supreme Court has strongly suggested that 11 U.S.C. § 522(f)(2), which permits debtors in bankruptcy proceedings to avoid liens on certain property, can limit the extent of a lienholder's interest in such property after the enactment of the statute. See United States v. Sec. Indus. Bank, 459 U.S. 70 (1982). In the absence of clear congressional intent, the Court refused to construe the statute to apply retroactively because such an interpretation would require the Court to face "difficult and sensitive questions" arising out of the Takings Clause. Id. at 82. The Court found no such difficulty with prospective application of the statute, despite its effect on lien interests that might later be created under state law. Our sister circuits have specifically held that prospective application of section 522(f) does not create takings liability. See In re Weinstein, 164 F.3d 677, 686 (1st Cir. 1999) ("[A]t its inception, the lien was subject to and limited by the debtor's power to avoid the lien

---

[2]    We also have made clear that, in the second step of the takings analysis, the "distinct investment-backed expectations" factor of the Penn Central test is to be judged at the time the personal property was acquired. See Commonwealth Edison Co. v. United States, 271 F.3d 1327, 1350 & n.22 (Fed. Cir. 2001) (citing Palazzolo v. Rhode Island, 533 U.S. 606, 633-34 (2001) (O'Connor, J., concurring)); see also Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1006 (1984). The question whether the Penn Central test has been satisfied, however, is separate from the question of whether a property interest exists in the first place.

under § 522(f)."); In re Thompson, 867 F.2d 416, 422 (7th Cir. 1989) (lien avoidance under federal bankruptcy statute "is not a taking when it is authorized before the creditor makes the secured loan in question"); In re Leicht, 222 B.R. 670, 682-83 (B.A.P. 1st Cir. 1998).

The Armstrong case, heavily relied on by the appellants here and discussed below, reached a similar conclusion. Armstrong v. United States, 364 U.S. 40 (1960). There the petitioners provided materials to a private contractor for use in the construction of a Navy ship, and obtained liens on those materials under state law. Pursuant to 34 U.S.C. § 582,[3] the government later made progress payments and was entitled to a "paramount" lien on the work done on account of each payment. The Court made clear that the enforcement of the government lien for progress payments did not result in a taking, because the petitioners' property interest was limited to "whatever proceeds the property might bring over and above the Government's claim to the amount of its progress payments." Id. at 45. The federal statute thus limited the petitioners' later-arising, state-created property interests, even though the state liens arose before the progress payments were made[4] and the enforcement of the federal statute reduced the value of the state liens.

---

[3] This statute, later codified at 10 U.S.C. § 7521 and subsequently repealed in 1994, Federal Acquisition Streamlining Act of 1994, Pub. L. No. 103-355, § 2001(j), 108 Stat. 3243, 3303, provided authorization to the Secretary of the Navy "to make partial payments from time to time during the progress of the work under all contracts made under the Navy Department for public purposes, but not in excess of the value of work already done," and stated that such contracts "shall provide for a lien in favor of the Government, which lien is made paramount to all other liens, upon the articles or thing contracted for on account of all payments so made." 34 U.S.C. § 582 (1952).

[4] See Br. for the Pet'rs at 10, Armstrong, 364 U.S. 40.

In other contexts our own cases have recognized that a federal statute or authority can constitute a "background principle" that inheres in the title to property interests arising after its enactment, therefore precluding a takings claim based on the application of the statute to those property interests. See, e.g., Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1218 (Fed. Cir. 2005) (federal government's longstanding exercise of "dominant control over the navigable airspace" limited property rights in use of that airspace); Am. Pelagic, 379 F.3d at 1379 (Magnuson Act was a background principle that inhered in after-acquired title to vessel and thus limited rights to uses of vessel contrary to the Act); M & J Coal Co. v. United States, 47 F.3d 1148, 1154 (Fed. Cir. 1995) (Surface Mining Control and Reclamation Act of 1977 limited company's right to mine under state permit issued after enactment of federal statute).[5]

Here there can be no question of the authority of the federal government to make loans to sugar processors. The loans provided by the CCC to processors like PNSC are part of a federal program designed to stabilize and support the domestic sugar market. Loans from the CCC to processors of domestic sugar beets are a major component of this program. Federal regulations guarantee that the loan proceeds will be used to make certain minimum payments to sugar beet producers, like appellants, who provide beets for processing. 7 C.F.R. § 1435.104(c). The loan proceeds therefore benefit both processors and growers, and support the national sugar industry in general. There is also no doubt as to the federal government's authority to obtain

---

[5] See also Ruckelshaus, 467 U.S. at 1003-04; Colvin Cattle Co. v. United States, 468 F.3d 803, 807 (Fed. Cir. 2006); Maritrans, 342 F.3d at 1352 (noting that "'background principles' derived from an independent source, such as state, federal, or common law, define the dimensions of the requisite property rights for purposes of establishing a cognizable taking" (emphasis added)).

and enforce security of the federal loans.  See Kimbell Foods, 440 U.S. at 726.  As the Supreme Court has explained, "state law is naturally preempted to the extent of any conflict with a federal statute."  Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372 (2000).  The federal statute, guaranteeing super-priority for the CCC loans to PNSC, and the state statute, guaranteeing first priority for the appellants' processor liens in the sugar refined by PNSC, clearly are in direct conflict.  Because the federal statute legitimately altered the priority of liens arising after the statute was enacted, it preempted state law to the contrary.

To be sure, takings questions may arise where the federal statute has a retroactive effect.  For example, as noted above, in Security Industrial Bank the Court stated that if it construed section 522(f), permitting debtors to avoid liens on certain property, to apply retroactively, it would "call upon the Court to resolve difficult and sensitive questions arising out of the guarantees of the Takings Clause."  459 U.S. at 82 (internal quotation marks omitted).  Similarly, in Preseault v. United States, 100 F.3d 1525 (Fed. Cir. 1996), we rejected the government's argument that the property interests could be defined "by the evolving enactment and implementation of federal railroad law" after the creation of the property rights in question.  Id. at 1537 (emphasis added).  "[B]road general legislation authorizing a federal agency to engage in future regulatory activity," id. at 1538, did not effectively limit the property right.[6]

---

[6] In Lucas, the Supreme Court indicated that, as to personal property, even retroactive application of a statute might permissibly alter a state-created property interest.  See 505 U.S. at 1027-28 ("[I]n the case of personal property, by reason of the State's traditionally high degree of control over commercial dealings, [the owner] ought to be aware of the possibility that new regulation might even render his property economically worthless . . . .").

However, this is not a situation in which a federal statute restricting the state lien was enacted after the state property interest came into existence. Beginning in 1977, Congress amended the Agricultural Act of 1949, Pub. L. No. 81-439, 63 Stat. 1051, to provide price support to the sugar industry through loans made to processors of sugar beets in certain crop years. See Food and Agriculture Act of 1977, Pub. L. No. 95-113, § 902, 91 Stat. 913, 949 (providing loans for 1977 and 1978 crop years). In 1991, Congress added a provision ensuring the super-priority of CCC loans to sugar processors over statutory and common law producer liens. See Food, Agriculture, Conservation, and Trade Act Amendments of 1991, Pub. L. No. 102-237, § 111(b), 105 Stat. 1818, 1830. In 1996, the Agricultural Market Transition Act reauthorized sugar beet processor loans, and again provided for the super-priority of the federal loans over statutory and common law liens in favor of sugar beet producers. See Pub. L. No. 104-127, tit. 1, §§ 156(b), 164(d), 110 Stat. 896, 931, 935-36.[7] This act was in effect in December 2000, when appellants' state liens attached. Contrary to appellants' argument, the fact that the statute only had an effect in this case after the state lien was created is irrelevant. The federal statutory limit existed long before that time, and its later application does not create a retroactivity problem.

Appellants finally argue that other cases support their argument that a federal statute may not alter property interests created by state law. These cases are all

---

[7] The 1996 Act also suspended, for the 1996 through 2002 crop years, 7 U.S.C. § 1421(e)(2)(a), a provision that had guaranteed payment by the government to sugar beet producers whose liens were not paid in full because of the insolvency of the processor. Agricultural Market Transition Act § 171(b)(1)(J), 110 Stat. at 937. Appellants allege that, prior to 1996, section 1421(e)(2)(a) had provided "just compensation" for what they claim would otherwise have been an unconstitutional taking.

distinguishable. In each case, the state-created property interest was rendered unenforceable not by operation of a preexisting federal statute but as a consequence of sovereign immunity. In Armstrong, materials on which the plaintiffs held state-law liens were transferred to the United States by operation of a contract to which the plaintiffs were not a party. 364 U.S. at 46-47. As a result, "the liens were still valid, but they could not be enforced because of the sovereign immunity of the Government and its property from suit." Id. at 46 (internal citation omitted). In both Shelden v. United States, 7 F.3d 1022 (Fed. Cir. 1993) and United States v. Metmor Financial, Inc. (In re Metmor Financial, Inc.), 819 F.2d 446 (4th Cir. 1987), title to property on which the plaintiffs held mortgage lien interests was transferred to the government under forfeiture provisions of federal criminal statutes. In these cases, sovereign immunity prevented the mortgage holders from enforcing their interests against the United States. See Shelden, 7 F.3d at 1030; Metmor, 819 F.2d at 450. Thus "transfer . . . altered, not the lien itself, but its enforceability." Metmor, 819 F.2d at 450. Similarly, in Murray v. United States, 817 F.2d 1580 (Fed. Cir. 1987), the United States acquired property through a tax lien foreclosure, and refused to allow mortgage holders to redeem the property. Id. at 1582. The mortgage holders were unable to bring suit against the government based on this refusal because of sovereign immunity. Id. In each of these cases the assertion of the defense of sovereign immunity was held to create a taking; none of the cases held that a federal statute limiting property interests created under state law and enacted before the property came into existence constituted a taking of those interests. To the contrary, as noted above, in Armstrong the Supreme Court specifically recognized that the enforcement of a superior government lien for progress payments,

arising under a preexisting federal statute, and the consequent reduction in value of the plaintiffs' liens, did not result in a taking. 364 U.S. at 45. The Court held only that plaintiffs were entitled to recover the value of their state-law liens remaining after the enforcement of the government liens. Id.

In summary, the background principles of law at the time appellants' liens were created therefore provided for super-priority of CCC's security interest over "all statutory and common law liens on . . . refined beet sugar in favor of the producers." 7 U.S.C. § 7284(d). State law provisions to the contrary were preempted to the extent that they could not and did not grant appellants any compensable property interest at the time of lien enforcement above the government's super-priority lien interest based on federal law. Because we hold that appellants had no compensable property interest in the priority of their state-created liens, we need not address the second step of the takings analysis—namely, whether the government action in fact resulted in any categorical or partial taking of a property interest.

## CONCLUSION

For the foregoing reasons, the judgment of the Court of Federal Claims is

AFFIRMED.

## COSTS

No costs.