Argued and submitted May 2, reversed and remanded October 10, 2012,
petition for review allowed March 28, 2013 (353 Or 428)

Fred HALL;
and Viewcrest Investments, LLC,
an Oregon limited liability company,
*Plaintiffs-Respondents,*

*v.*

STATE OF OREGON,
by and through the Oregon Department of Transportation,
*Defendant-Appellant,*

*and*

WESTEK PROPERTIES, LLC,
*Intervenor.*

Linn County Circuit Court
081164; A146386

288 P3d 574

Patrick M. Ebbett, Assistant Attorney General, argued the cause for appellant. With him on the brief were John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Denise Fjordbeck, Attorney-in-Charge, Civil/ Administrative Appeals. With him on the reply brief were

John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

W. Michael Gillette argued the cause for respondent. With him on the brief were Schwabe Williamson & Wyatt P.C. and Russell L. Baldwin.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

The jury in this inverse condemnation case found that plaintiffs' property had a fair market value of $4,000,000 before defendant's disputed activities and that these activities—repeated statements to the general public and potential purchasers that defendant intended to eliminate an I-5 interchange, thereby rendering plaintiffs' property landlocked, and then acquire it by condemnation— amounted to a substantial interference with plaintiffs' use and enjoyment of the property, reducing the property's value by $3,378,750.[1] The court subsequently awarded plaintiffs that amount plus $466,222.87 in attorney fees and costs. Defendant, the Oregon Department of Transportation (ODOT), appeals, contending first that its actions did not amount to a taking and second that, even if its actions were a taking, they did not amount to a compensable taking; a compensable taking in this situation would have occurred only if ODOT's activities deprived plaintiffs of *all* economically viable use of the property. We agree with ODOT that there was no taking, and we therefore reverse.

Plaintiffs own a 25-acre parcel of real property abutting Interstate 5 in Linn County. The property's only access to the public highway system is by way of an easement connecting the property to an overpass that is part of what is known as the Viewcrest I-5 interchange. When plaintiffs purchased the property in 1991, that access was blocked by a guardrail; in 1993, plaintiffs prevailed in a lawsuit against ODOT seeking removal of the guardrail. Plaintiffs then began to look for opportunities to develop their property, but without success. They did, however, purchase two small parcels, each containing a billboard, within the larger parcel.

Meanwhile, ODOT began to develop plans to address what it characterized as safety concerns near the Viewcrest I-5 interchange. One of the potential plans was to close the interchange, thereby rendering plaintiffs' property landlocked. ODOT informed plaintiffs, the general

---

[1] "Inverse condemnation is the popular description of a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." *Thornburg v. Port of Portland*, 233 Or 178, 180 n 1, 376 P2d 100 (1962).

public, and affected federal and local governmental entities of its plans, including the closure option. Public meetings were held. The closure option was not popular. ODOT then revised the plan, replacing the immediate closure option with a more delayed process. That planning process was ongoing when plaintiffs filed this action.

Plaintiffs' complaint alleged that ODOT's widely published statements indicating plans to close the Viewcrest interchange, landlock plaintiffs' property, and then acquire it by condemnation, resulted in "blighting plaintiffs' land" and causing "direct economic damages" in the amount of $5,353,000. At the contentious jury trial, each side attempted (without objection) to impugn the motives of the other, and also to use expert appraisal testimony to establish the property's value. Legal arguments centered on whether ODOT's activities amounted to a taking and, if so, the appropriate test to determine whether the taking was compensable. ODOT argued that planning to regulate property does not amount to a taking even if the planning might reduce the property's value, and that, in any event, no *compensable* taking occurs unless the government's activities leave the property with no substantial viable economic use. ODOT lost its legal arguments at several junctures: in an unsuccessful motion for a directed verdict, an unsuccessful challenge to jury instructions, an unsuccessful challenge to the verdict form, and an unsuccessful motion for judgment notwithstanding the verdict. The jury was instructed to determine whether ODOT's activities "substantially and unreasonably interfered with plaintiffs' use and enjoyment of their land and that [ODOT's] activities were sufficiently direct, particular, and of a magnitude to support a conclusion that the interference has reduced the fair market value of plaintiff's [land]," and was given a verdict form containing that question. The jury answered, "Yes." It also determined that the fair market value of the property was $4,000,000, and that "the amount of the reduction in the market value of plaintiffs' property caused by the unreasonable interference of [ODOT]" was $3,378,750. In a supplemental judgment, the court awarded plaintiffs their costs and attorney fees in the amount of $466,222.87 plus interest. This appeal ensued.

ODOT raises seven assignments of error. Five are variations on the argument that, in denying ODOT's motions and in instructing the jury, the court erred by rejecting the argument that ODOT's activities did not amount to a taking and rejecting the denial of all viable economic use standard in favor of the substantial and unreasonable interference with use and enjoyment standard as the appropriate measure to determine whether a compensable taking occurred under Article I, section 18, of the Oregon Constitution.[2] Because we agree that the court erred in denying ODOT's motion for a directed verdict, we need not address ODOT's sixth assignment of error, arguing that the court, having required the state to pay compensation, should have awarded the property to the state. ODOT's seventh assignment of error, challenging the award of attorney fees, is moot.

Although they disagree about several issues, the parties substantially agree on several others. They agree that, ordinarily, "[t]o establish a taking by inverse condemnation, the plaintiff is not required to show that the governmental defendant deprived the plaintiff of all use and enjoyment of the property at issue. * * * A 'substantial interference' with the use and enjoyment of property is sufficient." *Vokoun v. City of Lake Oswego*, 335 Or 19, 26, 56 P3d 396 (2002) (quoting *Hawkins v. City of La Grande*, 315 Or 57, 68-69, 843 P2d 400 (1992)). They also agree, however, that, when the governmental action resulting in the interference is legislation or some form of quasi-legislation (agency rules, zoning ordinances, etc.), a taking does not occur unless the enactment deprives the property owner of "all substantial beneficial use of its property." *Fifth Avenue Corp. v. Washington Co.*, 282 Or 591, 609, 581 P2d 50 (1978). And finally, the parties agree that ODOT's activities in this case did not deprive plaintiffs of all economically feasible

---

[2] Article I, section 18, of the Oregon Constitution provides, "Private property shall not be taken for public use * * * without just compensation[.]" Plaintiffs' complaint also alleged a violation of the Takings Clause of the Fifth Amendment to the United States Constitution, but, to the extent that the verdict and judgment reflect a ruling under the federal constitution, plaintiffs do not separately defend that ruling on appeal.

ODOT's first assignment of error also alleges that the evidence of the property's market value was too speculative to submit to the jury. In light of our decision, we do not reach that issue.

use of their property; the jury found as fact that it retained a value of $621,250.

ODOT argues initially that, under Oregon law, "mere plotting or planning in anticipation of a public improvement does not constitute a taking or damaging of property affected" unless the property's owner (1) "is precluded from all economically feasible private uses pending eventual taking for public use; or (2) the designation [of the land for public use] results in such governmental intrusion as to inflict virtually irreversible damage." *Id.* at 610, 614 (footnote omitted).

Plaintiffs do not dispute ODOT's assertion regarding the import of *Fifth Avenue Corp.* Rather, they respond that this case is not about ODOT planning a public improvement; plaintiffs insist that ODOT was driven, not by an intent to improve safety, but by malice directed toward one of plaintiffs' then-owners, Harris. According to plaintiffs, the question of ODOT's motive was presented to the jury, and the jury found in favor of plaintiffs' allegation.

Plaintiffs' response to ODOT's initial argument, however, is not only wrong, but, even if it were right, it would be self-defeating. It is wrong because, although plaintiffs argued to the jury, and presented evidence—without objection, for some reason—that ODOT was engaged in a vendetta, they did not allege such a theory in their complaint, nor was the jury instructed to that effect. Rather, the court instructed the jury,

> "In order to prevail on this claim plaintiffs must prove each of the following elements: Number one, that the property allegedly taken has a legal right to vehicle access to the west end of the Viewcrest interchange; number two, that the Department of Transportation's actions have substantially and unreasonably interfered with plaintiffs' use and enjoyment of their land, and that defendant's activities were sufficiently direct, particular, and of a magnitude to support a conclusion that the interference has reduced the fair market value of plaintiffs' [land]."

The jury's verdict form did not ask for a determination of malicious intent or motive. The relevant question asked,

"Did the plaintiffs show that defendant's activities have substantially and unreasonably interfered with plaintiffs' use and enjoyment of their land and that defendant's activities were sufficiently direct, particular, and of a magnitude to support a conclusion that the interference has reduced the fair market value of plaintiffs' land?'"

Further, *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968), does not permit us to infer that the jury found some improper motive. *Ball* allows us to infer a finding of fact when there is conflicting evidence about the fact and that fact "is a necessary predicate to the court's conclusion. \* \* \* The reasoning in [*Ball*] allows us to infer a finding of fact, but only where we can deduce that the [factfinder's] chain of reasoning must necessarily have included that fact as one of its links." *State v. Lunacolorado*, 238 Or App 691, 696, 243 P3d 125 (2010), *rev den*, 350 Or 530 (2011). Here, presuming (as we must) that the jury followed its instructions, considerations of ODOT's motive could have played no legitimate role in its finding that ODOT inflicted over $3,000,000 in damages to plaintiffs' property. In other words, we cannot infer from the verdict that the jury made any decision one way or another regarding ODOT's intent, and, even if we could, we could not infer that that decision legitimately affected their verdict.

Further, even if plaintiffs could have persuaded us that their case against ODOT was grounded in the belief that ODOT was pursing a vendetta instead of the public good, that argument would be self-defeating. If, as plaintiffs assert, the intent behind ODOT's actions was *not* to take plaintiffs' property for public use, then those actions could not amount to a taking. As the Supreme Court held in *Vokoun*, 335 Or at 27-28:

"This court long has held that a claim for inverse condemnation requires a showing that the governmental acts alleged to constitute a taking of private property were done with the intent to take the property for a public use. *See Gearin v. Marion County*, 110 Or 390, 402, 223 P 929 (1924) (distinguishing eminent domain from tort, in part, by whether governmental acts done with intent to take private property for public use). \* \* \* Plaintiffs apparently believe that [earlier cases] eliminated the requirement

that a claim for inverse condemnation requires a showing that the governmental defendant intended to take private property for a public use. We disagree."

We therefore conclude that the court erred in not granting ODOT's motion for a directed verdict. It is true that plaintiffs' evidence established that ODOT's publicly announced plans regarding the Viewcrest interchange lowered the value of plaintiffs' property. However, under *Fifth Avenue Corp.*, that evidence does not establish a compensable taking. Further, plaintiffs' attempt to avoid that outcome by arguing that ODOT's actions were a vendetta and not an exercise of the state's police power is self-defeating; no inverse condemnation claim lies without proof of an intent to take property for public use. Either way, plaintiffs lose. We therefore need not, and do not, address the question of whether the court also erred in adopting, and instructing the jury on, the "substantial interference" standard.

Reversed and remanded.