BRYAN, Justice
(concurring in the result in case no. 1110439 and dissenting in case no. 1110507).
The Takings Clause of the Fifth Amendment to the United States Constitution, which applies to both the federal government and the states, see Chicago, B. & Q. R.R. v. City of Chicago, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897), provides that private property shall not “be taken for public use, without just compensation.” Alabama’s general eminent-domain provision, § 23, Ala. Const.1901, mirrors the Takings Clause. Section 23 provides, in part: “[P]rivate property shall not be taken for, or applied to public use, unless just compensation be first made therefor.... ” The Takings Clause, as well as our § 23, “does not prohibit the taking of private property, but instead places a condition on the exercise of that power.” First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, 482 U.S. 304, 314, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). That is, it “is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking.” First English, 482 U.S. at 315, 107 S.Ct. 2378 (emphasis omitted). “One of the principal purposes of the Takings Clause is ‘to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.’ ” Dolan v. City of Tigard, 512 U.S. 374, 384, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) (quoting Amstrong v. United States, 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (I960)).
The classic example of a taking involves a direct appropriation of property or physical intrusion onto property. Before 1922, “it was generally thought that the Takings Clause reached only a ‘direct appropriation’ of property, or the functional equivalent of a ‘practical ouster of [the owner’s] possession.’ ” Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1014, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (citations omitted). However, in that year the United States Supreme Court stated that “if regulation goes too far it will be recognized as a taking” under the Takings Clause. Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (1922). “Beginning with Mahon, ... the [Supreme] Court recognized that government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster — and that such ‘regulatory takings’ may be compensable under the Fifth Amendment.” Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 537, 125 S.Ct. 2074,161 L.Ed.2d 876 (2005).
The main opinion on original submission concludes that a government’s regulatory conduct cannot effect a taking under § 23, which is our State’s parallel provision to the Takings Clause. That view places Alabama landowners, like M & N Materials, Inc., the plaintiff in this case, in the position of potentially having to “ ‘bear public burdens which, in all fairness and justice, should be borne by the public as a whole.’ ” Dolan, 512 U.S. at 384, 114 S.Ct. 2309 (quoting Armstrong, 364 U.S. at 49, 80 S.Ct. 1563). Thus, I must respectfully dissent in case no. 1110507.
First, I note that I agree with much of Justice Murdock’s substituted special writing. Justice Murdock aptly explains why § 23 applies to the Town of Gurley’s regulatory conduct in this case. However, whereas Justice Murdock distinguishes this case from Willis v. University of North Alabama, 826 So.2d 118 (Ala.2002), *55 a case relied on by the main opinion, I would simply overrule Willis.
In my opinion, Willis requires that there be a physical intrusion onto property for there to be taking of that property under § 23. In Willis, this Court stated, in a straightforward manner:
“UNA [University of North Alabama] argues that § 23 does not apply to this case because UNA did not physically take Willis’s property or apply Willis’s property to public use during the construction of the parking deck. We agree.”
826 So.2d at 121 (emphasis added). Thus, Willis precludes a “regulatory taking”— the type of taking allowed under the Takings Clause after Mahon — under § 23. Although the term “regulatory taking” may be given different meanings, see, e.g., John Martinez, Government Takings §§ 2:9-20 (2007), in the context of the present case the term describes a taking in which the government does not physically invade or disturb the property. For the following reasons, I believe we should overrule Willis.
Initially, I recognize that we have not been asked to overrule Willis and that “[s]tare decisis commands, at a minimum, a degree of respect from this Court that makes it disinclined to overrule controlling precedent when it is not invited to do so.” Moore v. Prudential Residential Servs. Ltd. P’ship, 849 So.2d 914, 926 (Ala.2002). However, this is that rare case in which we should overrule precedent on our motion.
As noted, more than 90 years ago, in 1922, the United States Supreme Court stated that “if regulation goes too far it will be recognized as a taking” under the Takings Clause of the Fifth Amendment. Mahon, 260 U.S. at 415, 43 S.Ct. 158. Since Mahon, the Supreme Court has developed extensive caselaw regarding regulatory takings under the Takings Clause; the concept of a regulatory taking under that provision is well established. See Martinez, supra, §§ 2:9-20. As noted, the applicable part of Alabama’s general eminent-domain provision, § 23, mirrors the Takings Clause. The United States Supreme Court’s construction of federal constitutional provisions is persuasive when we construe similar provisions of the Alabama Constitution. Pickett v. Matthews, 238 Ala. 542, 547, 192 So. 261, 265-66 (1939). To conclude otherwise would “produce much confusion and instability in legislative effectiveness.” Id. By interpreting § 23 to preclude a regulatory taking, Willis is out of line with well established Supreme Court precedent construing a provision materially the same as our provision in § 23.
Moreover, Willis is out of line with the vast majority of states, which recognize the concept of a regulatory taking under state constitutions and often borrow heavily from federal law on that subject. See Cannone v. Noey, 867 P.2d 797 (Alaska 1994); Mutschler v. City of Phoenix, 212 Ariz. 160, 129 P.3d 71 (Ariz.Ct.App.2006); Forest Glade Mgmt., LLC v. City of Hot Springs, (No. CA 08-200, November 12, 2008) (Ark.Ct.App.2008) (not reported in S.W.3d); Twain Harte Assocs., Ltd. v. County of Tuolumne, 217 Cal.App.3d 71, 265 Cal.Rptr. 737 (1990); G & A Land, LLC v. City of Brighton, 233 P.3d 701 (Colo.Ct.App.2010); Cumberland Farms, Inc. v. Town of Groton, 262 Conn. 45, 808 A.2d 1107 (2002); Gradous v. Board of Comm’rs of Richmond Cnty., 256 Ga. 469, 349 S.E.2d 707 (1986); Covington v. Jefferson Cnty., 137 Idaho 777, 53 P.3d 828 (2002); State v. Kimco of Evansville, Inc., 902 N.E.2d 206 (Ind.2009); Molo Oil Co. v. City of Dubuque, 692 N.W.2d 686 (Iowa 2005); Lone Star Indus., Inc. v. Secretary of Kansas Dep’t of Transp., 234 Kan. 121, 671 P.2d 511 (1983), superseded by statute *56 as recognized in Estate of Kirkpatrick v. City of Olathe, 289 Kan. 554, 215 P.3d 561 (2009); Annison v. Hoover, 517 So.2d 420 (La.Ct.App.1987); Seven Islands Land Co. v. Maine Land Use Regulation Comm’n, 450 A.2d 475 (Me.1982); Maryland-National Capital Park & Planning Comm’n v. Chadwick, 286 Md. 1, 405 A.2d 241 (1979); Blair v. Department of Conservation & Recreation, 457 Mass. 634, 932 N.E.2d 267 (2010); Poirier v. Grand Blanc Twp., 167 Mich.App. 770, 423 N.W.2d 351 (1988); DeCook v. Rochester Int’l Airport Joint Zoning Bd., 796 N.W.2d 299 (Minn.2011); Jackson Mun. Airport Auth. v. Evans, 191 So.2d 126 (Miss.1966); Clay Cnty. ex rel. Cnty. Comm’n of Clay Cnty. v. Harley and Susie Bogue, Inc., 988 S.W.2d 102 (Mo.Ct.App.1999); Buhmann v. State, 348 Mont. 205, 201 P.3d 70 (2008); Scofield v. Nebraska Dep’t of Natural Res., 276 Neb. 215, 753 N.W.2d 345 (2008); McCarran Int’l Airport v. Sisolak, 122 Nev. 645, 137 P.3d 1110 (2006); Burrows v. City of Keene, 121 N.H. 590, 432 A.2d 15 (1981); Mansoldo v. State of New Jersey, 187 N.J. 50, 898 A.2d 1018 (2006); Estate & Heirs of Sanchez v. County of Bernalillo, 120 N.M. 395, 902 P.2d 550 (1995); Fred F. French Inv. Co. v. City of New York, 39 N.Y.2d 587, 385 N.Y.S.2d 5, 350 N.E.2d 381 (1976); Beroth Oil Co. v. North Carolina Dep’t of Transp., 725 S.E.2d 651 (N.C.Ct.App.2012); Rippley v. City of Lincoln, 330 N.W.2d 505 (N.D.1983); State ex rel. Shemo v. City of Mayfield Heights, 95 Ohio St.3d 59, 765 N.E.2d 345 (2002); Calhoun v. City of Durant, 970 P.2d 608 (Okla.Civ.App.1997); Hall v. State ex rel. Oregon Dep’t of Transp., 252 Or.App. 649, 288 P.3d 574 (2012); Cleaver v. Board of Adjustment, 414 Pa. 367, 200 A.2d 408 (1964); Annicelli v. Town of S. Kingstown, 463 A.2d 133 (R.I.1983); Byrd v. City of Hartsville, 365 S.C. 650, 620 S.E.2d 76 (2005); US West Commc’ns, Inc. v. Public Util. Comm’n of South Dakota, 505 N.W.2d 115 (S.D.1993); Mayhew v. Town of Sunnyvale, 964 S.W.2d 922 (Tex.1998); Diamond B-Y Ranches v. Tooele Cnty., 91 P.3d 841 (2004); Killington, Ltd. v. State, 164 Vt. 253, 668 A.2d 1278 (1995); City of Virginia Beach v. Bell, 255 Va. 395, 498 S.E.2d 414 (1998); Presbytery of Seattle v. King Cnty., 114 Wash.2d 320, 787 P.2d 907 (1990); McFillan v. Berkeley Cnty. Planning Comm’n, 190 W.Va. 458, 438 S.E.2d 801 (1993); Eberle v. Dane Cnty. Bd. of Adjustment, 227 Wis.2d 609, 595 N.W.2d 730 (1999); and Cheyenne Airport Bd. v. Rogers, 707 P.2d 717 (Wyo.1985).
“[T]he right of acquiring and possessing property, and having it protected, is one of the natural, inherent, and unalienable rights of man.” Vanhome’s Lessee v. Dorrance, 2 U.S. (2 Dali.) 304, 310,1 L.Ed. 391 (Cir.Ct.Pa.1795). Our nation’s founders sought to protect the fundamental right of private property; unfortunately, Willis erodes that right. James Madison stated: “ ‘Government is instituted to protect property of every sort; as well as that which lies in the various rights of individuals, as that which the term particularly expresses. This being the end of government, that alone is a just government, which impartially secures to every man, whatever is his own.’” In re Certified Question from U.S. Bankruptcy Court for the E. Dist. of Mich., 477 Mich. 1210, 1212-13, 722 N.W.2d 423, 425 (2006) (Young, J., concurring) (emphasis omitted) (quoting “Property,” National Gazette, March 29, 1792, Writings of James Madison (New York, Putnam, Hunt ed. 1906), vol. VI, p. 102). Madison also stated that “ ‘[i]f the United States mean to obtain or deserve the full praise due to wise and just governments, they will equally respect the rights of property, and the property in rights....’” Taylor v. Armco Steel Corp., 373 F.Supp. 885, 887 (S.D.Tex.1973) (quoting National Gazette, March 29, 1792). *57 Alexander Hamilton wrote that one of the benefits of the proposed Constitution was “[t]he additional security which its adoption will afford to the preservation of [republican] government, to liberty, and to property.” Federalist No. 1 (Alexander Hamilton) (George W. Carey & James McLellan eds. 2001). Hamilton also wrote that state government, “in the administration of criminal and civil justice,” is “the immediate and visible guardian of life and property.” Federalist No. 17 (Alexander Hamilton) (George W. Carey & James McLellan eds. 2001). Arthur Lee, a delegate to the Continental Congress, opined that “ ‘the right of property is the guardian of every other right, and to deprive a people of this, is in fact to deprive them of their liberty.’ ” Resource Inv., Inc. v. United States, 85 Fed.Cl. 447, 470 n. 31 (2009) (quoting James W. Ely, Jr., The Guardian of Every Other Right: A Constitutional History of Property Rights 26 (2d ed. 1998)). William Blackstone, who held great influence among the Founders, wrote: “ ‘So great moreover is the regard of the law for private property, that it will not authorize the least violation of it; no, not even for the general good of the whole community.’ ” Kelo v. City of New London, 545 U.S. 469, 510, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005) (Thomas, J., dissenting) (quoting 1 William Blackstone, Commentaries on the Laws of England *135). By failing to recognize the concept of a regulatory taking under § 23, Willis falls short of national precedent and, in my opinion, undermines our fundamental right to private property.
Furthermore, I note that Willis itself overruled Foreman v. State, 676 So.2d 303 (Ala.1995), and Barber v. State, 703 So.2d 314 (Ala.1997), which relied on Foreman. A review of the briefs submitted in Willis indicates that no party or amicus curiae in that case asked this Court to overrule those cases.[10] In that case, the University of North Alabama and amici curiae did argue, on application for rehearing only, and in the alternative, that Foreman and Barber were “flawed” and that they “misapplied” the law, but they did not ask this Court to overrule those cases. On original submission in Willis, no party or amici argued that those cases were wrongly decided.
In short, Foreman and Barber, the cases Willis overruled, allowed for the possibility of compensation under § 23 for injuries to property that were not physical injuries, but Willis precluded that possibility. In my view, by overruling Willis, we would simply be returning the law to a position similar to the position in which it was before this Court changed the law on its own motion. In doing so, we would align our State with the overwhelming majority of jurisdictions. The landowners of this State deserve the same basic protections under well settled eminent-domain law afforded by other jurisdictions. For us to accomplish this, we must overrule Willis’s physical-intrusion rule and thereby allow for regulatory takings under § 23.
Having overruled Willis, I would then remand this case for the trial court to consider whether a regulatory taking under § 23 actually occurred, given the facts here. This raises the question of which standard or standards would be applied to determine whether a regulatory taking occurred. Considering the plethora of cases that have applied the well established regulatory-taking standards adopted by the Supreme Court, I would apply those stan *58-94 dards to cases involving alleged regulatory takings under § 23.
As noted, although the term “regulatory taking” may be given different meanings, see, e.g., Martinez, supra, §§ 2:9-20, in the present case the term merely describes a taking in which the government does not physically invade or disturb the property. Therefore, it would appear that one of two standards could be used to determine whether there was in fact a regulatory taking in this case. Id. Applying the standard established in Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), a government regulation goes “too far” if it “denies all economically beneficial or productive use of [the] land.” In that situation, a compensable taking occurs unless “background principles of the State’s law of property and nuisance” would restrict the owner’s intended use of the property. 505 U.S. at 1029, 112 S.Ct. 2886. A Lucas taking is sometimes referred to as a “total regulatory taking,” 505 U.S. at 1026, 112 S.Ct. 2886, or a “categorical regulatory taking,” Bair v. United States, 515 F.3d 1323,1326 (Fed.Cir.2008).
Any regulatory action causing less than the denial of all economically beneficial or productive use of the property would require an analysis under Penn Central Transportation Co. v. New York City, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg’l Planning Agency, 535 U.S. 302, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002). In Penn Central, the Supreme Court identified these factors for determining whether a regulatory taking has occurred: (1) “the character of the governmental action”; (2) “[t]he economic impact of the [action] on the claimant”; and (3) “the extent to which the [action] has interfered with distinct investment-backed expectations.” Id. at 124, 98 S.Ct. 2646. The Penn Central standard involves “essentially ad hoc, factual inquiries.” Id. A Penn Central taking is sometimes referred to as a “partial regulatory taking.” See Palazzolo v. Rhode Island, 533 U.S. 606, 633, 121 S.Ct. 2448,150 L.Ed.2d 592 (2001) (O’Connor, J., concurring); and Bair, 515 F.3d at 1326.
In conclusion, I concur in the result in case no. 1110439, but I must respectfully dissent in case no. 1110507. Regarding the latter case, I would grant rehearing, overrule Willis, look to federal caselaw regarding regulatory takings under § 23, and remand the case for the trial court to consider whether a regulatory taking occurred under either Lucas or Penn Central.
BOLIN and AVISE, JJ., concur.
Editor’s Note: The opinion of the Supreme Court of Alabama, in Ex parte Ankrorn, published in the advance sheet at this citation, 143 So.3d 58, was withdrawn from the bound volume because it will be published together with 2011 AVL 3781258.

. Because there was no oral argument in Willis, the only arguments before this Court were those submitted in briefs.